

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

RUTH CAMPBELL, ET AL., ) No. ED99622
)
    Plaintiffs/Appellants, ) Appeal from the Circuit Court of
) Franklin County
vs. )
) Honorable Robert D. Schollmeyer
COUNTY COMMISSION OF FRANKLIN )
COUNTY, )
)
    Defendant/Respondent, ) Filed: July 22, 2014
)
AND )
)
UNION ELECTRIC COMPANY, D/B/A )
AMEREN MISSOURI, )
)
    Intervenor-Defendant/Respondent. )

## I. INTRODUCTION

Plaintiffs Ruth Campbell, Nancy Campbell, Edwin Elzemeyer, Jr., Euline Elzemeyer, Richard Stettes, Lorainne Stettes, Kara Carter, Jennifer Carter Norris, Katherine Carter Thomas, Susan Yarbrough, John Yarbrough, and the Labadie Environmental Organization (collectively "Labadie Neighbors") appeal the judgment of the Circuit Court of Franklin County on their petition for a writ of certiorari in favor of defendant County Commission of Franklin County ("Commission") and Union Electric Company, d/b/a Ameren Missouri ("Ameren"). Labadie Neighbors allege two points of

error. First, they argue that the trial court erred by dismissing their Count I claim challenging the legality of Commission's decision to adopt amendments to the Franklin County Unified Land Use Regulations allowing coal-ash landfills, because Commission failed to conduct valid public hearings as required by law.[1] We agree. We reverse the trial court's dismissal of Count I.

In Count II, Labadie Neighbors argue that the trial court erred by upholding Commission's decision to adopt the amendments, because the amendments fail to support the health, safety, and general welfare of Franklin County's citizens. Because the trial court must first resolve Count I before resolving Count II, we reverse the trial court's decision on Count II. We would remand this case to the trial court for further proceedings consistent with this opinion. However, because of the general interest of the question posed by this case, we transfer to the Supreme Court pursuant to Rule 83.02.

## II. BACKGROUND

The Labadie Neighbors are eleven individuals who live or own property in the immediate vicinity of Ameren's Labadie power plant in Franklin County, Missouri, and the Labadie Environmental Organization, a citizens' group opposed to Ameren's plan to build a coal-ash landfill in the Missouri River floodplain. Respondent Commission is the governing body of Franklin County.[2] Respondent Ameren is a utility company headquartered in the City of St Louis, Missouri, that owns and operates four coal-fired

---

[1] Labadie Neighbors challenge the validity of two public hearings Franklin County held on the subject of the zoning amendments: one before the Planning and Zoning Commission, and another before the County Commission. We refer to this claim as "Count I."

[2] The Commission is a three member group of elected officials charged with administering the government of Franklin County, including oversight of county planning and zoning. *See generally* §§ 49.010-49.020, R.S.Mo. (2000) (establishing county commissions); *see also, e.g.*, §§ 64.850, 64.860, R.S.Mo. (2000) (establishing planning and zoning powers of county commission in counties organized under alternative county planning and zoning statutes).

2

power plants in the St. Louis metropolitan area, including the Labadie plant in Franklin County.

Labadie Neighbors filed in the Circuit Court of Franklin County a petition for writ of certiorari pursuant to section 64.870.2, R.S.Mo. (2000), challenging Commission's amendment of the Franklin County Unified Land Use Regulations to permit the construction of coal-ash landfills "contiguous to the boundary of the property upon which a public utility power plant is situated."[3] *See generally* Franklin Cnty., Mo., Unified Land Use Reg. Art. 10, § 238 (adopted Oct. 25, 2011). Count I alleged that Commission's adoption of the amendments was illegal, because Commission failed to conduct valid public hearings. Count II alleged that Commission's decision to adopt the amendments was illegal, because the amendments do not promote the health, safety, and general welfare of the citizens of Franklin County.[4] In particular, Labadie Neighbors allege the following facts pertinent to Count I:

> 53. In 2009, Ameren Missouri announced to the public its proposal to build a coal-ash landfill on the land it had recently acquired nearby the Labadie plant.
> 54. In July 2009, Ameren Missouri met with Franklin County Planning and Zoning representatives to discuss Ameren's proposal to build a coal-ash landfill near the Labadie plant.
> 55. On November 16, 2009, Ameren Missouri held a public information session in Labadie to discuss its proposal to build a coal-ash landfill near the Labadie plant. . . .
> 62. The Franklin County Commission held a public hearing on December 14, 2010, and February 8, 2011, regarding the proposed landfill zoning amendments. . . .

---

[3] Ameren's Labadie power plant is the sole public utility power plant in Franklin County.

[4] According to the Franklin County Unified Land Use Regulations Article 14, section 321, any amendment to the regulations "must promote the health, safety, morals, comfort and general welfare of Franklin County by conserving and protecting property and building values, by securing the most economical use of the land and facilitating the adequate provision of public improvements in accordance with the master plan adopted by Franklin County." Additionally, any exercise of police power by Franklin County in zoning and planning must "promote the order, health, safety, morals, and general welfare of society." *Ryder v. St. Charles Cnty.*, 552 S.W.2d 705, 707 (Mo. banc 1977).

3

76. The proposed landfill zoning amendments that were the subject of the hearings . . . required that any coal-ash landfill in Franklin County be (1) located within 1,000 feet of an existing utility power generation plant and (2) under common ownership with the adjacent power plant.

78. Ameren Missouri's Labadie power plant is the only public utility power generation plant in Franklin County.

79. The land owned by Ameren Missouri [is] contiguous to the Labadie power plant [and] is in the 100-year floodplain of the Missouri River and most of it is in the floodway.

82. At the public hearing before the Planning and Zoning Commission, the Chairman announced that speakers could not discuss Ameren Missouri or its proposed site for a coal-ash landfill near the Labadie power plant. The Chairman stated: "We are not here to discuss any particular project."

83. At the public hearing before the Franklin County Commission, the Presiding Commissioner stated that speakers could not discuss Ameren Missouri or its proposed site for a coal-ash landfill near the Labadie power plant. The Presiding Commissioner stated: "[I]f we start going off referring to Ameren and the proposal . . . there is no proposal. There hasn't been anything filed so that's going to be a separate issue. . . . If we go off on a tangent about Ameren or about fly ash and all that, I don't want to do that, but I will interrupt you."

84. [T]he Presiding Commissioner and the County Counselor interrupted speakers when they attempted to discuss Ameren Missouri's proposed Labadie landfill site . . . .

92. Because the landfill zoning amendments made coal-ash landfills a permitted use, the Franklin County zoning regulations offer no [subsequent] opportunity for a public hearing on Ameren Missouri's proposed coal-ash landfill in the Missouri River floodplain and floodway.

93. The Franklin County Commission acted illegally and unreasonably by adopting the landfill zoning amendments on October 25, 2011, without holding a valid public hearing as required by section 64.875 and Article 14, section 321 of the Unified Land Use Regulations of Franklin County.

After the Petition was filed, the trial court issued a writ of certiorari to Commission, directing it to provide the trial court a "certified copy of the full, true, and complete record pertaining" to the decision of Commission. Ameren filed a motion to intervene, on the ground that Labadie Neighbors' challenge to the amendments was a challenge to "Ameren Missouri's right to create, operate, and maintain a utility waste landfill" on its property adjacent to the Labadie power plant. The trial court granted Ameren's motion to intervene.

4

After Commission certified the record of its proceedings to the trial court, Commission and Ameren filed nearly identical motions for judgment on the pleadings pursuant to Rule 55.27(b), or in the alternative, to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 55.27(a)(6). They argued Labadie Neighbors' petition failed to state a claim for relief, because:

> [T]he admissions contained in [Labadie Neighbors' petition] demonstrate that [Labadie Neighbors] and their designated consultants were heard and their testimony and evidence considered and discussed by both the Franklin County Planning & Zoning Commission and the Franklin County Commission prior to the Frank County Commission's enactment of . . . the "Landfill Zoning Amendments."[5]

Additionally, Ameren filed a motion to appoint a referee to take additional evidence in the case.[6]

The trial court conducted a hearing on Commission's and Ameren's motions to dismiss. At the request of the trial court, Commission and Ameren filed separate memoranda in support and Labadie Neighbors filed a memorandum in opposition. Thereafter, without explanation, the trial court granted the motions to dismiss Count I.[7] Following a hearing on the merits, the trial court entered final judgment in favor of Ameren and Commission on Labadie Neighbors' Count II claim that the zoning amendments do not promote the health, safety, and general welfare of Franklin County. This appeal follows.

---

[5] In regard to both counts, Ameren also argued that the case was moot, because before the amendments were approved Franklin County zoning regulations already permitted the construction of a coal-ash landfill adjacent to Ameren's Labadie power plant. Neither party addresses this argument on appeal. Therefore, we do not address this argument.

[6] The trial court denied Ameren's motion to appoint a referee. However, the appellate record contains no additional information on this matter beyond that contained in the trial court docket entries.

[7] Generally, "[w]hen a trial court does not set out the reasons for dismissal in its judgment, we presume that it dismissed the petition for one of the reasons asserted in the motion to dismiss." *Lemay Fire Prot. Dist. V. St. Louis Cnty.*, 340 S.W.3d 292, 294 (Mo. App. E.D. 2011).

## III. STANDARD OF REVIEW

In Missouri "[t]he writ of certiorari or review maintains its common law function," except as modified by statute.[8] *State ex rel. Sw. Bell Tel. v. Brown*, 795 S.W.2d 385, 388 (Mo. banc 1990). The function "of the common-law writ of certiorari . . . [is to review] all questions of jurisdiction, power, and authority of the inferior tribunal . . . and all questions of irregularity in the proceedings." *Id.* at 387-88 (quoting 14 Am. Jur. 2d *Certiorari* § 2 (1964)). Here, section 64.870.2 has "enlarge[d] the scope of the remedy of certiorari and the grounds on which it will lie," *Gash v. Lafayette Cnty*, 245 S.W.3d 229, 234 (Mo. banc 2008) (quoting 14 C.J.S. *Certiorari* § 4 (2006)), to encompass legislative zoning decisions, *id.* at 233-34.[9]

Unchanged, however, is the rule that "[o]nly questions of law are at issue in an action for a common law writ of certiorari." *State ex rel. Pub. Counsel v. Pub. Serv.*

---

[8] We note that the Missouri Rules of Civil Procedure may not be used to challenge the issuance of the common law writ of certiorari. Ameren and Commission both cite Rule 55.27(a)(6) of the Missouri Rules of Civil Procedure as the proper mechanism for dismissing Labadie Neighbors' Count I, yet they cite no authority for doing so. The writ of certiorari maintains its common law function, because only where both common law and statute are silent may the rules of civil procedure be employed. *See Sw. Bell Tel.*, 795 S.W.2d at 388, 389. Under the common law, issuance of a writ of certiorari must be challenged by filing a motion to quash, sometimes referred to as "motion to dismiss," or "motion to recall the writ." *See State ex rel. Powell v. Shocklee*, 141 S.W. 614, 616 (Mo. 1911); *see generally* 14 C.J.S. *Certiorari* § 69-85 (2014) (discussing motion to quash or dismiss writ of certiorari). As this common-law procedure is well established, it is neither necessary nor appropriate to resort to the rules of civil procedure. *See S.W. Bell Tel.*, 795 S.W.2d at 388-89. For purposes of this appeal, therefore, we consider Ameren's and Commission's motions to dismiss Count I as common-law motions to quash the writ. *See Modern Fin. Co.*, 426 S.W.2d at 741 (treating defective motion attacking issuance of writ as motion to quash); *see also* 14 Am. Jur. 2d *Certiorari* § 86 (2014) (listing failure of the petition to state a claim for which relief by certiorari may be granted as reason for granting motion to quash).

[9] Certiorari at common law "generally only lies to review the proceedings of bodies and officers of a judicial or quasi-judicial character." *Id.* at 233. In addition, the common-law writ is "confined to the record returned from the tribunal below," *Gash*, 245 S.W.3d at 234 n.10, and "[t]he reviewing court generally does not have the power to render a substitute judgment." 14 C.J.S. *Certiorari* § 111 (2013). However, section 64.870.2 alters these two latter rules by providing that the trial court "may appoint a referee to take additional evidence in the case" and "amend a county commission's zoning and rezoning ordinances." *Gash*, 245 S.W.3d at 234 n.10. And section 64.870.2 provides the exclusive procedure for challenging zoning decisions of counties organized under the alternative county planning and zoning statutes, such as Franklin County. *See Gash*, 245 S.W.3d at 232-34; *see also* Franklin Cnty., Mo., Unified Land Use Reg. Art. 1, § 2 (2011); §§ 64.800-64.905, R.S.Mo. (2000) (alternative county planning and zoning statutes).

6

*Comm'n*, 210 S.W.3d 344, 351 (Mo. App. W.D. 2006). "Because questions of fact are not at issue . . . the reviewing court . . . considers only questions of law that appear on the face of the record." *Id.* at 351-52.

Likewise, "[a] motion to dismiss or quash the writ for . . . right to relief prayed by the petition . . . confess[es] all facts well pleaded, but search[es] the whole record and attack[s] the first fatal [error in a matter of law]". *State ex rel. Berra v. Sestric*, 159 S.W.2d 786, 787 (Mo. 1942); *State ex rel. Modern Fin. Co. v. Bledsoe*, 426 S.W.2d 737, 740 (Mo. App. 1968). "A court should construe the petition liberally and consider [quashal] only if it is quite clear that no relief can be had under any legal theory."[10] 14 C.J.S. *Certiorari* § 83 (2014).

## IV. DISCUSSION

### A. Count I: Public Hearings Claim

In their first point, Labadie Neighbors argue that the trial court erred by quashing or dismissing their Count I claim that the Commission's decision to adopt the zoning amendments was illegal due to its failure to conduct valid public hearings as required by law. Specifically, they contend that they properly stated a cause of action, because their petition alleges that Commission denied members of the public the opportunity to directly address Ameren's proposal for a new coal-ash landfill, despite the fact that the zoning amendments were designed solely to authorize that landfill. In response, Ameren and Commission contend that Labadie Neighbors' own petition alleged that they had a

---

[10] In light of our ruling on Count I and for the reasons discussed below, we reach the issue of the standard of review only for Ameren's and Commission's motions to quash. We do not reach the standard of review on Count II, nor the standard of review for section 64.870.2 claims that have been resolved on the merits by the trial court.

full and fair opportunity to be heard, and failed to allege what specific arguments and evidence they were prevented from presenting.[11]

We begin our analysis by recognizing that Commission must hold a public hearing before adopting a zoning amendment. "A county receives its authority to enact zoning regulations from the State of Missouri through enabling statutes. If a county fails to comply with the enabling statute, its zoning action is void and unenforceable." *State ex rel. Helujon, Ltd. v. Jefferson Cnty.*, 964 S.W.2d 531, 538 (Mo. App. E.D. 1998) (citations omitted). Likewise, local requirements and procedures for amending zoning regulations must be followed. *Id*. Both Missouri state statute and Franklin County land-use regulations require a public hearing to be held before Commission may adopt amendments to its zoning regulations. *See* § 64.875, RSMo (2000); Franklin Cnty., Mo., Unified Land Use Reg. art. 14, § 323 (2011). Accordingly, "[t]he requirement[] of . . . [a] hearing [is] mandatory for validity of an amending ordinance, and ordinances passed in contravention thereof are void." *State ex rel. Freeze v. City of Cape Girardeau,* 523 S.W.2d.123 at 126 (Mo. App. E.D. 1975) (citation omitted).

Missouri courts have yet to define the exact contours of a valid public hearing for purposes of adopting a zoning amendment. For guidance in resolving this issue, we will examine: (1) the plain meaning of the word "hearing" as defined by the dictionary, and

---

[11] Ameren and Commission make two additional arguments. First, they argue that the record on appeal shows that Labadie Neighbors had ample opportunity to present their arguments and evidence to Commission. However, we will not disregard the well-pleaded facts in Labadie Neighbors' petition and review the record independently of the petition to determine the fairness of the public hearings.

Second, Ameren and Commission argue that Labadie Neighbors waived their claim that they were unable to present evidence at the hearings, because they objected to appointing a referee to take additional evidence in the circuit court. We fail to see how presenting additional evidence in a certiorari proceeding conducted *after* Commission made its decision bears on the question of whether Labadie Neighbors had a fair opportunity to present such evidence in a public hearing conducted *before* Commission made its decision. Presumably, Labadie Neighbors complain that they were unable to present evidence at the hearings, because they believe that said evidence might have affected Commission's decision to adopt the amendments in the first place.

(2) how the rationale behind the requirement of fair notice of a public zoning hearing is equally applicable to how the hearing itself should be conducted. We will then apply the facts of the instant case to determine whether Labadie Neighbors state a proper cause of action for challenging the validity of a public zoning hearing mandated by the legislature.

First, we look to the plain meaning of the word "hearing" in the pertinent zoning statutes and regulations. *See* § 64.875, RSMo (2000); Franklin Cnty., Mo., Unified Land Use Reg. art. 14, § 323. "[T]he primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." *Gash*, 245 S.W.3d at 232 (quoting *State ex rel. Burns v. Whittington*, 219 S.W.3d 224, 225 (Mo. banc 2007)). "[T]o discern the intent of the General Assembly, the Court looks to statutory definitions or, if none are provided, the text's 'plain and ordinary meaning,' which may be derived from a dictionary." *Id.* (quoting *Burns*, 219 S.W.3d at 225). "Thus, '[t]he construction of statutes is not to be hyper-technical, but instead is to be reasonable and logical and to give meaning to the statutes.'" *Id.* (quoting *Donaldson v. Crawford*, 230 S.W.3d 340, 342 (Mo. banc 2007)).

Merriam-Webster defines the term "hearing" as "a session . . . in which testimony is taken from witnesses," an "opportunity to be heard, to present one's side of a case, or to be generally known or appreciated," and "a listening to arguments." *Merriam-Webster's Collegiate Dictionary* 574 (11th ed. 2012). We believe, therefore, that by requiring a "hearing" before Commission may amend its zoning ordinances, the Legislature intended for members of the public to be able "to present [their] side of [the] case," and for Commission to "listen to [those] arguments."

9

Second, we believe that the rationale behind requiring fair notice of a public zoning hearing is equally applicable to how the hearing itself should be conducted. This Court has held a that fairness is required in giving notice that a public hearing will take place: "notice should fairly be given the meaning it would reflect upon the mind of the ordinary layman, and not as it would be construed by one familiar with the technicalities solely applicable to the laws and rules of the zoning commission." *Freeze*, 523 S.W.2d at 126 (quoting *Palmer v. Mann*, 201 N.Y.S. 525, 528 (N.Y. App. Div. 1923), *aff'd*, 237 N.Y. 616 (N.Y. 1924)). It is only reasonable to conclude that fairness is similarly required in the hearing itself. *See, e.g.*, *Yost v. Fulton Cnty.*, 348 S.E.2d 638, 640 (Ga. 1986) ("Proper notice and a proper hearing are mutually dependent. The opportunity to be heard cannot benefit a party who lacks knowledge of the opportunity. Likewise, notice of a hearing is worthless to the party who, after responding to the notice, is denied the opportunity to speak."); s*ee also Smith v. Skagit Cnty.*, 453 P.2d 832, 846 (Wash. 1969) ("It is axiomatic that whenever the law requires a hearing of any sort as a condition precedent to the power to proceed, it means a fair hearing."). Thus, citizens at a public hearing should be able to speak on the subject of a zoning amendment as "it would reflect upon the mind of an ordinary layman," and the public's right to speak at a hearing should not be suppressed due to "technicalities solely applicable to the laws and rules of the zoning commission."[12] *See Freeze*, 523 S.W.2d at 126 (quoting *Palmer*, 201 N.Y.S. at

---

[12] Though amending a zoning ordinance is legislative in nature, *Gash*, 245 S.W.3d at 233, we note that Missouri law is clear on the requirement for fairness in the context of an administrative hearing:

> An administrative proceeding will not be considered a 'fair-hearing' if it lacks the rudimentary elements of 'fair play' . . . . It cannot be said that there has been a 'fair hearing' if practices are indulged in or the hearing is conducted in a manner leading to the conclusion that a denial of justice may have resulted.

*Greater Garden Ave. Area Ass'n v. City of Webster Groves*, 655 S.W.2d 760, 764 (Mo. App. E.D. 1983) (quoting *Jones v. State Dep't Pub. Health & Welfare*, 354 S.W.2d 37, 39–40 (Mo. App. 1962)); see also Op. Mo. Att'y Gen. No. 256 (Dec. 21, 1965) ("Fair play dictates that the hearing be conducted in an orderly

10

528); *see also, e.g.*, *Smith*, 453 P.2d at 847 (test for the validity of public hearing is "whether a fair-minded person in attendance . . . [could] say that everyone had been heard who . . . should have been heard and that the legislative body . . . gave reasonable faith and credit to all matters presented, according to the weight and force that [they] were in reason entitled to receive.").

With these guidelines in mind, we now turn to the facts of the instant case. Labadie Neighbors' petition alleges that Commission's zoning amendments authorize the presence of coal-ash landfills next to and under common ownership with an existing power plant, without mentioning Ameren by name. Second, it alleges that Ameren's Labadie plant is the only power plant in Franklin County, and that Ameren publicly proposes to build a new coal-ash landfill on their property adjacent to the plant. Third, the petition alleges that during the hearings on the zoning amendments, Commission announced that the public could not speak regarding Ameren's landfill proposal. For example, the petition states that during the hearing on December 14, 2010, the presiding commissioner stated:

> [I]f we start going off referring to Ameren and the proposal . . . there is no proposal. There hasn't been anything filed yet, so that's going to be a totally separate issue . . . . If we go off on a tangent about Ameren or about fly ash and all that, I don't want to do that, but I will interrupt you.

Finally, the petition alleges that Commission followed through with its threats to cut off discussion, preventing members of the public from voicing their concerns about the proposed landfill.

Accepting all well-pleaded facts as true, *Berra*, 159 S.W.2d at 787, and "constru[ing] the petition liberally," 14 C.J.S. *Certiorari* § 83, we believe that the import

---

manner, and that the county court provide reasonable opportunity for proponents and/or opponents of the . . . ordinance to be heard.").

of these allegations is plain. Commission adopted the challenged zoning amendments for the specific purpose of allowing Ameren to locate a new coal-ash landfill on its property adjacent to its Labadie power plant.[13] In fact, Commission's published notice of the hearings stated that the subject matter of the hearings would be "utility and non-utility waste landfills and the definitions and *locations* thereof." [14] (emphasis added). Nevertheless, Commission used a technicality—that the zoning amendments did not mention Ameren by name—to prevent the public from discussing Ameren's proposed landfill at the hearings.[15] This action denied the citizens of Franklin County a fair "opportunity to be heard, to present [their] side of [the] case, [and] to be generally known or appreciated." *Merriam-Webster*, *supra* at 574. This action also prevented the citizens of Franklin County from discussing the real subject of the amendments as "it would reflect upon the mind of an ordinary lay[person]," due to "technicalities solely applicable to the laws and rules of the zoning commission." *Freeze*, 523 S.W.2d at 126 (quoting Palmer, 201 N.Y.S. at 528). In light of the liberal reading we must give these allegations, 14 C.J.S. *Certiorari* § 83, we believe that Labadie Neighbors' petition properly states a claim that Commission acted unfairly.[16]

---

[13] Even Ameren admitted as much in their motion to intervene in this case, stating that Labadie Neighbors' petition "seeks to challenge the validity of the Amendment Ordinance and Ameren Missouri's right to create, operate, and maintain a [utility waste landfill]."

[14] Labadie Neighbors' petition alleges that the only location in Franklin County where the zoning amendments authorize a new landfill is Ameren's proposed site adjacent to its Labadie plant. We believe it only reasonable for informed citizens in such circumstances to expect to be heard on the specific issue of Ameren's proposal to *locate* a coal-ash landfill in the Missouri River floodplain.

[15] We note also that Commission and Ameren do not argue that Labadie Neighbors was able to discuss Ameren's proposed coal-ash landfill in particular. Rather, they assert that Commission's decision that "it would not devote time to a conjectural Ameren proposal was reasonable and fair."

[16] Because Judge Gaertner, Jr. concurs in result only, we refer to his opinion as "the dissent".The dissent criticizes our review of Labadie Neighbors' allegations of unfairness as an attempt to "dictate the particular aspects of a legislative body's hearing," and as potentially violative of the doctrine of separation of powers. However, the Missouri legislature and the Franklin County Commission enacted the public hearing requirements in the first place. Labadie Neighbors merely asked that we interpret and apply these laws, which is the quintessential duty of this Court. *See State ex rel. Praxair,*

12

Even so, Commission and Ameren argue that Labadie Neighbors' petition was deficient for failure to allege specifically what evidence they were prevented from submitting at the hearings. We disagree. We believe Labadie Neighbors' petition alleges a great deal of information that Commission barred it from discussing at the hearings. First, the petition alleges that Commission prevented landowners from discussing the harm they believe they will suffer if Ameren is permitted to go forward with its proposed landfill. Namely, the landowners believe that the landfill would

> threaten[] to contaminate their groundwater wells, contaminate their land, pollute the air they breathe, increase truck traffic near their homes and business, increase flood damage to their properties, adversely affect their views of the floodplain, impair their use and enjoyment of their properties, and reduce the value of their properties and businesses.

Further, the petition alleges that Commission prevented the public from discussing the specific site where Ameren proposes to build its new landfill. For instance, the petition alleges:

> The land surrounding the Labadie plant is within the 100-year floodplain of the Missouri River and most of it is within the regulatory floodway delineated by the Federal Emergency Management Agency . . . . The land . . . is [also] in an earthquake hazard zone. According to the Missouri Department of Natural Resources . . . the land is at risk of liquefaction during an earthquake, which could cause the landfill to collapse.

Finally, Labadie Neighbors allege that they were prevented from discussing the history of the existent coal-ash landfills at Ameren's Labadie plant. For example, the petition alleges:

> [Ameren's] 1970 ash pond has been leaking since at least 1992, when Ameren Missouri reported two leaks totaling approximately 50,000 gallons per day to the [Missouri Department of Natural Resources]. . . . [and] [n]either Ameren Missouri nor any government agency has [tested

*Inc. v. Mo. Pub. Serv. Comm'n*, 344 S.W.3d 178, 190 (Mo. banc 2011) ("Our legal system is based on the principle that an independent, fair and competent judiciary will interpret and apply the laws that govern us." (quoting Rule 2.01 Preamble to Missouri Code of Judicial Conduct)).

for or] cleaned up any groundwater contamination caused by leakage from the 1970 ash pond.

All of this information is specific to Ameren. We must take as true the allegation in the petition that Labadie Neighbors were prevented from discussing Ameren's proposed coal-ash landfill in the Missouri River floodplain. *See Berra*, 159 S.W.2d at 787. A liberal reading of the petition, 14 C.J.S. *Certiorari* § 83, therefore, presumes that Labadie Neighbors were unable to present this specific information.

In sum, we believe that a public hearing, like notice thereof, "is an indispensable step in the process by which 'parties in interest' may profoundly affect the legislative course of [an] ordinance . . . . [by] permit[ting] interested citizens an opportunity to furnish the municipality relevant information to prevent improvident changes." *Freeze*, 523 S.W.2d at 125. Labadie Neighbors' petition alleges that Commission denied them a fair chance to speak on the issue they reasonably understood to be the hearings' subject matter: Ameren's proposed coal-ash landfill and the ramifications of locating it in the Missouri River flood plain. Such action would have effectively barred Labadie Neighbors from addressing the reason that they oppose the zoning amendments in the first place. We believe these allegations are more than adequate to withstand the liberal reading afforded to a plaintiff's petition on a motion to quash. *See* 14 C.J.S. *Certiorari* § 83 ("A court should construe the petition liberally and consider [quashal] only if it is quite clear that no relief can be had under any legal theory.").

Thus, we hold that Labadie Neighbors' petition is sufficient to withstand Ameren's and Commission's motion to quash. We reverse the trial court's judgment of dismissal on Count I.

**B. We Would Remand Count I**

The dissent agrees that the trial court erred in dismissing Count I. But instead of remanding to the trial court, the dissent erroneously concludes that we should reach the merits of Labadie Neighbors' Count I public hearing claim. This conclusion rests upon several mistaken contentions regarding our standard of review. Specifically, the dissent is mistaken regarding: (1) the proposition that this Court must disregard the actions of the trial court and render a de novo judgment; (2) the applicability of Rule 84.14; and (3) a party's inability to file—and a court's inability to grant—a motion to quash or dismiss after the return of the lower tribunal's record to the reviewing court. Most importantly, however, we begin with the dissent's disregard of section 64.870.2, which is instructive of the scope of review here. *Gash*, 245 S.W.3d at 232-34.

1. Section 64.870.2

Section 64.870.2 provides that in an appeal from a zoning decision, the circuit court "shall allow a writ of certiorari . . . of the action taken and data and records acted upon" and "may reverse or affirm or may modify the decision brought up for review." *Id.* Thereafter, a "party to the cause may prosecute an appeal to the appellate court . . . *in the same manner . . . provided by law* for appeals from other judgments of the circuit court in civil cases." *Id.* (emphasis added). Thus, the plain language of the statute dictates that we review the trial court's dismissal of Count I in the same manner as we would any other dismissal or quashal in a certiorari action. *See Gash*, 245 S.W.3d at 232 ("[T]the primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." (quoting *Burns*, 219 S.W.3d at 225)).

Missouri precedent—law which this Court must follow—is replete with examples of appellate courts reviewing the propriety of a circuit court's judgment granting a motion to quash a writ of certiorari. *See, e.g.*, *Berra*, 159 S.W.2d 786, 786-87 (Mo. 1942) (reviewing grant of motion to quash).[17] Moreover, Missouri appellate courts have reviewed the judgment of the circuit court granting a motion to quash a writ of certiorari issued pursuant to section 64.870.2. *State ex rel. Koeing v. Franklin Cnty. Bd. of Zoning Adjustment*, 809 S.W.2d 874, 875 (Mo. App. E.D. 1991) (reviewing grant of motion to dismiss section 64.870 certiorari claim); *see also Life Med. Sys., Inc. v. Franklin Cnty. Comm'n*, 810 S.W.2d 554, (Mo. App. E.D. 1991) (reviewing dismissal of misnamed section 64.870.2 certiorari claim). We see no reason why this Court should review the trial court's judgment dismissing Labadie Neighbors' section 64.870.2 writ of certiorari in a *different* manner than that established by the foregoing case law.[18]

---

[17] *See also State ex. Rel. Callahan v. Hess*, 153 S.W.2d 713, 714 (Mo. 1941) (same); *State ex rel. Conway v. Hiller*, 180 S.W. 538, 538 (Mo. 1915) (same); *Waller v. Everett*, 52 Mo. 57, 58 (Mo. 1873) (same); *State ex rel Auto Fin. Co v. Collins*, 482 S.W.2d 529 (Mo. App. 1972) (same); *State ex rel. Pruitt-Igoe Dist. Cmty. v. Burks*, 482 S.W.2d 75, 76 (Mo. App. 1972) (same); *State ex rel. Croy v. City of Raytown*, 289 S.W.2d 153, 155 (Mo. App. 1956) (same); *Vill. of Grandview v. McElroy*, 9 S.W.2d 829, 830 (Mo. App. 1928); *Sch. Dist. No. 2 v. Pace*, 87 S.W. 580, 581 (Mo. App. 1905) (same).

[18] Though not strictly related to why the dissent's standard of review on Point I is in error, we note that the dissent also erroneously contends regarding Point II that there is "little" difference between the "fairly debatable" standard of review for legislative decisions and the "competent and substantial evidence" standard for quasi-judicial and administrative decisions. *See generally* Michael T. White, *Curious County Zoning Law Gets Curiouser*, 64 J. Mo. B. 300, 302-04 (Nov.-Dec. 2008) (noting that "competent and substantial evidence" standard generally used for review by writ of certiorari); *id.* at 301-302 (noting that adopting zoning ordinance is legislative act; more deferential "fairly debatable" standard is generally used to review legislative acts). At least one major difference lies in the way each standard regards the evidence relied on by the legislative, quasi-judicial, or administrative body in making its decision. *Compare, e.g.*, *Henry v. Mo. Dep't of Mental Health*, 351 S.W.3d 707, 712 (Mo. App. W.D. 2011) (explaining that in review of administrative decisions, court looks to record as a whole and defers to administrative body regarding weight of evidence and credibility of witnesses), *with Land Clearance for Redevelopment Auth. St. Louis v. Inserra*, 284 S.W.3d 641, 645-46 (Mo. App. E.D. 2009) (explaining that in review of legislative decisions, court is not confined to record or even concerned with what evidence legislative body actually considered; instead court is concerned only with end result, i.e., whether the legislative action is reasonable and fairly debatable). We do not, however, reach the issue of which standard would apply to Labadie Neighbors Count II challenge to the merits of Commission's decision to adopt the zoning ordinance.

2. We Should Not Disregard the Trial Court's Actions

The dissent insists that we must disregard the trial court's proceedings, and make a de novo determination on Labadie Neighbors' claims. The dissent opines that "the outcome of the case at the circuit court level generally has no bearing on our review . . . . [and] the adequacy of the petition, as well as the circuit's determination of its adequacy, have no practical effect on our review." These contentions are mistaken for three reasons.

First, this Court's jurisdiction does not permit us to adjudicate Labadie Neighbors' claims anew, as if they were filed in this Court in the first instance. Rather, it is the circuit court that has "original jurisdiction over all cases and matters, civil and criminal." Mo. Const. art. V, § 14(a). Article V, section 3 of the Missouri Constitution provides that "[t]he court of appeals exercises [only] general appellate jurisdiction over appeals from circuit court judgments."[19] *Goins v. Goins*, 406 S.W.3d 886, 889 (Mo. banc 2013) (citing Mo. Const. art. V, § 3). Thus, "an appellate court sits as a court of review. Its function is not to hear evidence and, based thereon, to make an original determination."[20] *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978); *Caldwell v. Farmers' & Merchs.' Bank*, 71 S.W. 1093, 1095 (Mo. App. STL. 1903) ("This is a court of appellate, and not of original, jurisdiction, except in certain specified cases. It is likewise a court of review, and not of trial, and deals with the record of the proceedings

---

[19] We note that the court of appeals does have jurisdiction to determine original remedial writs. Mo. Const. art. V, § 4.1. However, section 64.870.2 specifies that a petitioner is required to file a writ of certiorari with the trial court. *Accord* Rule 84.22 ("No original remedial writ shall be issued by an appellate court in any case wherein adequate relief can be afforded by an appeal or by application for such writ to a lower court . . . .").

[20] Related to this Court's function as a court of review, Missouri courts recognize that "there can be no review of a matter which has not been presented to or expressly decided by the trial court." *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 814 (Mo. banc 2011) (quoting *Robbins v. Robbins*, 328 S.W.2d 552, 555 (Mo. 1959)); § 512.160.1, R.S.Mo. (2000) ("[N]o allegations of error shall be considered in any civil appeal except such as have been presented to or expressly decided by the trial court."). Here, as we have explained, the trial court never reached beyond the merits of Labadie Neighbors Count I.

17

in the lower [tribunal].". Thus, a de novo review of the Commission's actions before the trial court has passed on the merits of Labadie Neighbors' Count I would exceed this Court's jurisdiction.

Second, ignoring the trial court's disposition would render section 64.870.2's statutory review process meaningless. *See Am. Nat'l Prop. & Cas. Co. v. Ensz & Jester, P.C.*, 358 S.W.3d 75, 85 (Mo. App. W.D. 2011) ("[W]e will avoid a construction that renders statutory language meaningless."). Section 64.870.2 provides for a two level review process, whereby a litigant first challenges the Commission's decision in the trial court, and second may prosecute an appeal of the trial court's ruling in the appellate court. Were an appeal after a trial court's dismissal to render the trial court's decision of "no general bearing" or "no practical effect," we fail to see why the legislature would have required a litigant to file in the trial court in the first place. Trial court review would be relegated to a mere formality to which a litigant would have to pay lip service before she could appeal and obtain an actual, substantive disposition of her claim. "Statutes should be construed in such a way as to avoid unreasonable, oppressive, or absurd results." *Mo. ex rel. Bouchard v. Grady*, 86 S.W.3d 121, 123 (Mo. App. E.D. 2002) (quoting *Lincoln Cnty. Stone Co. v. Koenig*, 21 S.W.3d 142, 146 (Mo. App. E.D. 2000)).

Moreover, the intent of Rule 64.870.2 is to provide a litigant with a unique opportunity for review at the trial court level.[21] Again, "the primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." *Gash*, 245 S.W.3d at 232 (quoting *Burns*, 219 S.W.3d at 225). Section 64.870.2 provides that the circuit court may "take *additional evidence* in the case" and "may

---

[21] We observe that the litigant must have the "opportunity" for a full trial court review, because the challenge must obviously be sufficient to survive a motion to dismiss or quash before a review on the merits is appropriate.

18

reverse or affirm or may *modify* the decision brought up for review." (emphasis added). These provisions give the trial court much broader powers than is traditionally afforded by the writ of certiorari, *Gash*, 245 S.W.3d at 234 n.10, and much broader powers than this Court may exercise on appeal, *see* § 64.870.2 (specifying that appeal is prosecuted "in the same manner . . . provided by law for appeals from other judgments of the circuit court in civil cases"). Specifically, on appeal, this Court may only reverse or affirm the action of the board of adjustment or of the county commission. *See Hernreich v. Quinn*, 168 S.W.2d 1054, 1059 (Mo. banc 1943) (explaining writ of certiorari ordinarily "brings up only the record; . . . does not authorize an inquiry into the merits; and can relieve only by [reversal] . . . in whole or part, without the substitution of a new judgment or order).

Consequently, when the trial court grants a motion to dismiss for failure to state a claim without looking beyond the petition, it necessarily sends the claim to this Court before the trial court has "take[n] additional evidence in the case" or considered "modify[ing] the decision brought up for review." § 64.870.2. If this Court were then to move directly to the merits of the commission's decision—without first examining whether the trial court's dismissal was in error—we would permanently foreclose the litigant's opportunity to present "additional evidence" or have the trial court "modify" the challenged decision. *See* § 64.870.2. Instead, we could review the litigant's claim only on the record, and only to reverse or affirm. *See Hernreich*, 168 S.W.2d at 1059. We do not believe the legislature intended that section 64.870.2's review process be short-circuited to such an extent. *See State ex rel. Bouchard v. Grady*, 86 S.W.3d at 123 ("The legislature is not presumed to have intended a meaningless act.").

Third, the dissent misconstrues the meaning of the rule that this Court reviews the decision of the Commission, and not that of the trial court. *Cf., e.g.*, *Dotson v. Cnty. Comm'n*, 941 S.W.2d 589, 592 (Mo. App. W.D. 1997). It does not require this Court to disregard the ramifications of a trial court's dismissal. Rather, this rule applies only to a final judgment on the merits of a county zoning decision—here, on the issue of whether the Commission's decision to adopt the coal-ash landfill ordinance is fairly debatable (or supported by competent and substantial evidence).[22] It is based on the principle that a court will "not substitute [its] discretion for that of a legislative body," *Great Rivers Habitat Alliance v. City of St. Peters*, 246 S.W.3d 556, 562 (Mo. App. E.D. 2008), and will "refuse[] to second-guess local government legislative factual determinations," *id.* (quoting *Spradlin v. City of Fulton*, 924 S.W.2d 259, 263 (Mo. banc 1996)); *cf. Coffer v. Wasson-Hunt*, 281 S.W.3d 308, 310 (Mo. banc 2009) ("If the evidence permits either of two opposing findings, deference is afforded to the administrative decision."). Accordingly, this Court does not look to any findings of fact the trial court may have made, but instead looks to the facts and circumstances as they appeared before the Commission at the time. *See Land Clearance for Redev. Auth. v. Inserra*, 284 S.W.3d 641, 646 (Mo. App. E.D. 2009). Then, based on that established factual record, this Court determines de novo whether the disputed zoning decision is fairly debatable. *See Great Rivers Habitat Alliance*, 246 S.W.3d at 562. Thus, this rule does not require that we ignore the actions of the trial court and conduct a de novo review in every instance. *See id.* (reviewing trial court's grant of summary judgment).

---

[22] Again, we do not reach the issue of which standard applies to Labadie Neighbors' Count II.

20

### 3. Rule 84.14

The dissent erroneously contends that Rule 84.14 provides authority for this Court to "give such judgment as the [trial] court ought to [have] giv[en]" on Count I. However, "[u]nder our procedure . . . the writ of certiorari is the same as at common law, and [Missouri] courts may properly adopt the usages and principles applicable to . . . the writ as the same may have been developed under the common-law system, consistent . . . with . . . existing statutes." *State ex rel. Jacobs v. Trimble*, 274 S.W. 1075, 1077 (Mo. 1925). While we may fall back upon the rules of civil procedure for guidance where the common law and statute are silent, it is neither necessary nor appropriate to do so where common-law procedure is well established. *See S.W. Bell Tel.*, 795 S.W.2d at 388-89. As we have explained, the common law procedure of reviewing the propriety of the trial court's dismissal of a writ of certiorari is well-established in Missouri. Thus, Rule 84.04 provides no authority for this Court to render a substitute judgment in place of a proper disposition in the trial court.

### 4. Motion to Quash Writ of Certiorari Filed after the Return

The dissent also erroneously contends that we should reach the merits of this case, because Ameren's and Commission's motions to dismiss were filed after the return of the record on appeal.[23] The dissent claims that once the return of the lower tribunal's record has been made, a court should decline to quash the petition for failure to state a claim, and instead review the record directly.

---

[23] "A return is a formal transcript of the record, or so much of it as required by a writ of certiorari, and a statement, where proper or necessary, of relevant matters not appearing in the record." 14 C.J.S. *Certiorari* § 61 (2014). " The court, board, or tribunal to which the writ is directed, in obedience to the command of the writ, transmits the return to the court issuing the writ." *Id.*

From the outset, we note that the cases cited by the dissent do not support its contention regarding the preclusive effect of the return. The dissent first cites *State ex rel. Davidson v. Caldwell*, 276 S.W. 631, 634 (Mo. 1925), where the Court concluded that the respondent waived its defense that the writ had been improperly "issued by the clerk rather than the court," because the challenge "was not insisted upon before or raised by the pleadings or argument of counsel during the trial of the case in the circuit court." *Id.* The Court did not conclude that a motion to quash after the return is untimely.

The dissent's reliance on *Davidson* rests on its misreading of the following sentence: "As indicative of the waiver of the respondents *upon the overruling of their demurrer* in the circuit court . . . they filed their return, which constituted a general appearance to the action on the merits, and waived any defects in the issuance of the writ." *Id.* (emphasis added). A "demurrer" is an antiquated term for a motion to dismiss. *Wenzel v. Wenzel*, 283 S.W.2d 882, 888 (Mo. App. STL. 1955). Thus, the trial court had already overruled the respondent's motion to dismiss at the time of the return. Further, the Court was merely noting that a party's appearance in court after its motion to dismiss has been denied—here, in order to make the return—is a good indication that a party has waived its objection to improper service of process. *See, e.g.*, *State ex rel. Sperandio v. Clymer*, 581 S.W.2d 377, 384 (Mo. banc 1979) ("The general principle is that if a party takes any action which recognizes that the cause is in court and assumes an attitude that the jurisdiction of the court has been acquired, he is bound thereby and the action amounts to a general appearance.").

Similarly unsupportive of the dissent's argument are *State ex rel. Modern Finance Co. v. Bledsoe*, 426 S.W.2d 737, 740 (Mo. App. STL. 1968), and *State ex rel. McClain v.*

*Burney*, 26 S.W.2d 814, 815 (Mo. App. K.C. 1930). In *Modern Finance*, 426 S.W.2d at 740, the court simply stated that "*[i]n the absence of a motion to quash the writ . . . one looks only to the record to determine whether petitioner is entitled to the relief asked; there is then no occasion to refer to the allegations of the petition.*" (emphasis added). And in *McClain*, 26 S.W.2d at 815, a per curiam order, the court merely noted that the trial court treated a motion to dismiss as a pleading on the merits, because "*the parties . . . treated [the motion] as a pleading raising an issue upon the merits of the case.*" (emphasis added).

More to the point, the Missouri Supreme Court en banc specifically repudiated the notion that a motion to quash cannot be filed after the return in *State ex rel. Powell v. Shocklee*, 141 S.W. 614, 616 (Mo. banc 1911). The *Powell* Court observed:

> [I]t is stated as the law that, after the writ is issued and the record of the inferior court has been certified in response thereto, the discretionary stage as to the issuance of the writ has passed, and it is then the duty of the court to hear and determine the cause on its merits, but, as we understand [it] . . . that doctrine was not concurred in by a majority of the members of the court, and therefore the case need not be regarded as a precedent upon that point.

*Powell*, 141 S.W. at 616. Regarding the respondent's motion for judgment on the pleadings, which was filed after the return and treated as a demurrer, *cf. Wenzel*, 283 S.W.2d at 888 (noting "demurrer" replaced by "motion to dismiss" in modern practice), the *Powell* Court concluded:

> As the application for a writ of certiorari is made ex parte, and may be granted by one member of the court, no good reason is perceived why the question as to whether the writ was improvidently granted may not be inquired into when the respondents are brought into court and for the first time have an opportunity to raise that issue, as is the recognized practice in the case of other original proceedings. The weight of authority favors the right of respondents to attack by proper motion the regularity of the issuance of the writ.

*Id.*; *see also State ex rel. Lunsford v. Landon*, 265 S.W. 529, 530, 532 (Mo. banc 1924) (granting motion to quash writ as improvidently granted where motion was filed after return); *State ex rel. New Amsterdam Cas. Co. v. Richardson*, 61 S.W.2d 409 (Mo. App. K.C. 1933) (affirming trial court's grant of motion to quash filed after return); 14 C.J.S. *Certiorari* § 69 (2014) ("After the return of the writ, the proper practice is to move to quash or dismiss the writ."); 14 Am. Jur. 2d *Certiorari* § 85 (2014) ("It has also been held that a motion to supersede the writ is made before the return while a motion to quash is made only after the return."). Thus, the dissent's reliance on the notion that a court should reach the merits once the return is filed is misplaced.

In sum, the dissent is mistaken in its contention that we should disregard the well-pleaded facts in Labadie Neighbors' petition on the Count I public hearing claim, and review the record independently of the petition to determine the fairness of the public hearings. Rather, as with any other dismissal, we must review Labadie Neighbors' Count I by taking all well-pleaded facts as true and searching for errors of law. *See State ex rel. Berra v. Sestric*, 159 S.W.2d 786, 186 (Mo. 1942). Therefore, we decline to review Count I on the merits, and would remand this claim to the trial court for review consistent with section 64.870.2.

### C. Count II: Merits of the Zoning Amendments

Lastly, because the trial court erred by dismissing Labadie Neighbors' Count I public hearings claim, we reverse the trial court's judgment upholding on the merits Commission's decision to adopt the landfill zoning amendments. "The requirement[] of [a] [valid] hearing [is] mandatory for validity of an amending ordinance, and ordinances passed in contravention thereof are void." *Freeze*, 523 S.W.2d at 126 (citation omitted).

24

Until such time as Count I is resolved on its merits by the trial court, a final judgment upholding Commission's decision to adopt the amendments is premature.

## V. CONCLUSION

For the foregoing reasons, we reverse the trial court's quashal of Labadie Neighbors' Count I claim that Commission failed to conduct valid public hearings. We reverse as premature the trial court's judgment on Count II affirming the Commission's decision to adopt the zoning amendments. We would remand this matter to the trial court for further proceedings consistent with this opinion.[24] However, because of the general interest of the question posed by this case, we transfer to the Supreme Court pursuant to Rule 83.02.

_____
Lisa S. Van Amburg, Presiding Judge


Patricia L. Cohen, J. concurring in a separate opinion and
Gary M. Gaertner, Jr., J., concurring in result in a separate opinion.

---

[24] For the trial court on remand, we note that Count I is a matter the trial court must review de novo. As we have explained, Commission is not legally authorized to adopt the zoning amendments without first conducting valid public hearings. See *Freeze*, 523 S.W.2d at 126. Though the findings and conclusions that Commission made in support of its decision to adopt the zoning amendments are "deserving of deference, a review of the legal authorization to make such a decision is a purely legal question." *State ex rel. Jackson v. City of Joplin*, 300 S.W.3d 531, 536 n.2 (Mo. App. S.D. 2009). "Where the issue presents a question of law, it is a matter for the independent judgment of the reviewing court, and the legality of the [Commission's] decision will be reviewed de novo." *Id.* at 536.


RUTH CAMPBELL, et al., )  No. ED99622
 )
  Plaintiffs/Appellants, )
 )
vs. )
 )
COUNTY COMMISSION OF FRANKLIN ) Appeal from the Circuit Court of
COUNTY, ) Franklin County
 )
  Defendant/Respondent, )
 )
AND )
 ) Honorable Robert D. Schollmeyer
UNION ELECTRIC COMPANY, D/B/A )
AMEREN MISSOURI, )
 )
  Intervenor-Defendant/Respondent. ) Filed: July 22, 2014

## CONCURRING OPINION

I write to provide my perspective on the standard of review with respect to the trial court's judgment as to Count I. As an initial matter, I observe that both the majority and the dissent conclude that the trial court erred when it dismissed Count I for failure to state a claim. However, the majority and the dissent disagree on the proper standard of review to employ to reach that conclusion. Determining the appropriate standard of review is critical because it controls not only the analysis of the trial court's ruling but also the proper disposition of the

appeal. In particular, the dissent's failure to utilize the correct standard of review with respect to Count I leads it to improperly undertake a resolution of the merits of Count I.[1]

This court has clearly and concisely articulated the standard of review when considering whether a trial court erred in dismissing a claim for failure to state a claim: "Our review of a dismissal for failure to state a claim is <u>de novo</u>." <u>Chochorowski v. Home Depot U.S.A., Inc.</u>, 295 S.W.3d 194, 197 (Mo.App.E.D. 2012). "When we consider whether a petition fails to state a claim upon which relief can be granted, we accept all properly pleaded facts, giving the pleadings their broadest intendment, and we construe all factual allegations favorably to the pleader." <u>Id.</u>; <u>see also</u> <u>State ex rel. Helojon, Ltd. v. Jefferson County</u>, 964 S.W.2d 531, 537 (Mo.App.E.D. 1998) ("In reviewing a trial court's grant of a motion to dismiss, this Court allows the pleadings their broadest intendments, treats all allegations as true, and construes the allegations in a manner favorable to the plaintiff."). More pertinently here, it is not the function of the court of appeals "on review of a judgment of dismissal for failure to state a claim, to determine whether an appellant is entitled to relief on the merits." <u>Chochorowski</u>, 295 S.W. 3d at 197. Accordingly, once the court determines that the trial court erred in dismissing the claim, the appropriate disposition is generally remand.

There is no basis in this record for this court to depart from the standard of review articulated above and resolve the merits of Count I. To do so undermines the long-standing principle that an appellate court is a court of review. Our court's function is not to "hear evidence and, based thereon, to make an original determination." <u>Thummel v. King</u>, 570 S.W.2d 679, 687 (Mo. banc 1978). Although the trial court might have opted to convert the hearing on

---

[1] The dissent recognizes that the trial court dismissed Count I for failure to state a claim – i.e. prior to the resolution of any substantive factual or legal issues raised in Count I – but nevertheless opts to review Count I as if the trial court adjudicated a substantive issue as in Count II.

the motion to dismiss to a hearing on summary judgment, it apparently chose not to do so. As Ameren acknowledges in its brief, "the Circuit Court took no new evidence on the allegations of the petition." Ameren also admits in its brief that although the trial court had the writ record available, it "did not look" at it. Likewise, on appeal, neither party has suggested that the trial court's order was anything other than a dismissal for failure to state a claim. As we recently explained:

> The trial court was free to make a more expansive determination, but doing so necessitated converting the motion to dismiss into one for summary judgment. In that case, the court should have notified the parties, giving them time to prepare and present relevant evidence; or it must have been clear the parties waived such notice and consented to the conversion. (citation omitted). Neither occurred here, and neither party has at any time suggested that this should be viewed as anything other than a dismissal.

State ex rel. Am. Eagle Waste Indus. v. St. Louis County, 272 S.W.3d 336, 341 (Mo.App.E.D. 2008). As we emphasized in American Eagle Waste, a summary resolution of a case, as the dissent undertakes with respect to Count I, requires notice and an opportunity to prepare and present relevant evidence. Alternatively, the record must demonstrate the parties consented to summary resolution. None of the criteria for summary resolution are met here.[2]

A helpful case on the question of whether it is appropriate for our court to resolve the merits of a claim where the issue before the court is the propriety of a dismissal for failure to

---

[2] Ameren suggests that Plaintiffs argued that with respect to Count I "this Court may review the record of the public hearings to determine if they were conducted fairly, even if the circuit court did not look to the County Writ Record." However, this is a mischaracterization of plaintiffs' position. The quote Ameren uses to support this statement establishes that plaintiffs were referring to Count II, not Count I. Plaintiffs very clearly are seeking an opportunity to "demonstrate on the merits that the 'hearing' in this case was invalid." In their reply brief, plaintiffs point out that Ameren "invites this court to review the entire record in ruling on the circuit court's dismissal with Count I….[but] cites no legal authority for this request." Clearly, plaintiffs are neither consenting to nor seeking a decision on the merits in this court and Ameren has identified no case law supporting such a determination.

3

state a claim is State ex rel. Schaefer v. Cleveland, 847 S.W.2d 867 (Mo.App.E.D. 1982). In Schaefer, the trial court dismissed the relator's petition for failure to state a cause of action. Id. at 869. At issue in Schaefer was the court's jurisdiction. Id. at 869-870. Because respondents answered the petition for alternative writ and filed motions directed to the sufficiency of the allegations to state a cause of action and the trial court thereafter ruled on the sufficiency of the allegations, the court's order to dismiss was final and appealable. Id. at 870. The court then turned to the merits of the appeal. In considering the merits of the appeal, the court stated the following: "We, of course, make no determination of the truth of the facts alleged. As previously indicated, we are bound by the facts alleged in relator's petition." Id. at 870. After concluding that relator's petition stated a cause of action, the court remanded the case to the trial court. Id. at 873.

To justify the propriety of an appellate resolution of issues that were neither considered at the Commission level nor in the circuit court, the dissent cites two cases, Fairview Enters., Inc., v. City of Kansas City, 62 S.W.3d 71 (Mo.App.W.D. 2001) and Bird v. Mo. Bd. Of Architects, Prof'l Eng'rs, Prof'l Land Surveyors & Landscape Architects, 289 S.W.3d 516 (Mo. banc 2008), authorizing de novo review on appeal of a determination rendered by a governmental body. These cases are clearly distinguishable and provide no basis for appellate resolution of the merits of Count I. In Fairview, the plaintiffs sought declaratory relief with respect to an ordinance passed by the Kansas City City Council, following hearings on the proposed ordinance. The validity of the hearings before the city council were not at issue. The circuit court held two days of hearings prior to declaring the ordinances null and void. On appeal, the court of appeals reviewed de novo the plaintiffs' challenge to the validity of the zoning legislation. The

4

difference between Fairview and this case is evident: Count I is not a challenge to the substance of the ordinance.  That challenge occurs in Count II.

The Bird decision is likewise unpersuasive as an authority for initial appellate resolution of the merits of Count I.  The dissent cites a passage from Bird, ostensibly supporting a resolution of the merits rather than a remand, but omits important language.  The omitted language describes the substance of a reviewable agency decision, namely "findings and conclusions, and the board's discipline."  Bird, 259 S.W.3d at 516.  Here, there is no comparable decision to review.  The Commission did not consider the issues raised in Count I.  Nor did the circuit court.

The dissent's disposition on the merits of Count I is, in essence, an exercise of original jurisdiction rather than appellate jurisdiction.  In 1903, the Supreme Court considered and rejected such an improper exercise of appellate review in State ex rel. Scott v. Smith, 75 S.W. 586 (Mo. 1903).  Scott arose out of a disbarment proceeding.  Mr. Scott appeared for trial in the circuit court and filed an application for a change of venue.  The circuit court denied the motion, heard evidence and rendered a judgment of disbarment.  Mr. Scott appealed the matter to the court of appeals, which decided that the circuit court erred in refusing the application to change venue.  However, rather than remand the case to the circuit court, the court of appeals proceeded to resolve the matter.  Mr. Scott filed a writ of certiorari, which the Supreme Court granted, challenging the authority of the court of appeals to enter a judgment of disbarment.  The respondents, the judges of the court of appeals, contended they had the right to review the facts and enter such "judgment as the trial court should have entered."[3]  The Supreme Court held that "the first and only jurisdiction the appellate court acquired was an appellate jurisdiction and it

_____

[3] Rule 84.14 employs nearly identical language in delineating the scope of an appellate disposition.

5

was not required to exercise any other." Id. at 590. Rejecting the respondents' contention that they had the authority to render a judgment on the merits, the Supreme Court concluded that the court of appeals did not "undertake to modify, correct or in any way change the judgment of the trial court…it tried the case anew and entered its own independent judgment.…" Id. In words equally applicable here, the Supreme Court held that the court of appeals "exceeded its legitimate powers":

> This proceeding was instituted in pursuance of the statute; in that respect, it is purely statutory. Relator during the progress of the trial, preserved his exceptions, as he was fully authorized to do under the statute. He had the right to have an impartial tribunal try his case. His affidavit for a change of venue, whether true or false in point of fact, must be taken as true, and the Court of Appeals correctly held that it was error to refuse his application to change the venue, and the court should have reversed and remanded the cause with directions to the trial court, to send said cause to another division of the Jackson Circuit Court for trial.

Id.

I appreciate the dissent's concern about judicial economy. However, considerations of judicial economy are not a sufficient basis to remove this particular case from resolution by the trial court. In addition, it is premature and speculative to conclude that the parties will adduce no additional evidence as to Count I once this court resolves the issue of the sufficiency of the pleadings. Certainly unlike common law writ procedure, Section 64.870 permits the trial court on remand to appoint "a referee to take additional evidence in the case."[4]

To justify an appellate resolution of the merits on the grounds of judicial economy, the dissent cites Nicolai v. City of St. Louis, 762 S.W.2d 423 (Mo. banc 1988). Nicolai highlights

---

[4] The dissent contends that plaintiffs had the opportunity to supplement the record and declined to do so. However, according to plaintiffs, their opposition was unrelated to the motion to dismiss Count I. They opposed Ameren's referee motion because it allegedly "improperly sought to supplement the County's record regarding the merits of the zoning decision," i.e. Count II.

the lack of a basis for this court to resolve the merits of Count I. In <u>Nicolai</u>, the plaintiff appealed, among other things, a trial court dismissal of his declaratory judgment action for failure to state a claim. <u>Id.</u> at 424. The defendant admitted that the dismissal was error. <u>Id.</u> at 424-25. In deciding to resolve the merits, the Supreme Court noted that: (1) the plaintiff "does not contend that he has been denied the opportunity to argue his position on the merits[,]"; and (2) "[t]he parties join in asking this Court to render a final determination on the issues presented in the pleadings." <u>Id.</u> at 426. Neither of these factors are present here.

I would further note that <u>Nicolai</u> and <u>Magenheim v. Bd. of Educ. of the Sch. Dist. of Riverview Gardens</u>, 347 S.W.2d 409 (Mo.App. 1961), also cited by the dissent in support of appellate resolution of the merits, are declaratory judgment actions. The <u>Gash</u> decision makes clear that where Section 64.870.2 governs, it "precludes the use of declaratory judgment." 245 SW.3d at 234, n. 10. In any event, even assuming the relevancy of precedent developed with respect to declaratory judgment actions, the Supreme Court has held as follows:

> [I]t is not the function of the trial court or this court on appeal from a judgment of dismissal to make an analysis of the law under which the rights are claimed or to construe the statutes in question or to determine on the merits whether [appellant] is entitled to declaratory relief.

<u>City of Creve Coeur v. Creve Coeur Fire Prot. Dist.</u>, 355 S.W.2d 857, 859-60 (Mo. 1962). Therefore, it is not appropriate for a trial court, much less this court, to use a ruling on a motion to dismiss "as a vehicle to enter judgment on the merits." <u>City of Hannibal v. Marion County</u>, 745 S.W.2d 842, 846 (Mo.App.E.D. 1988). Once a motion to dismiss is overruled, a party is "entitled to win or lose after a submission on the merits." <u>Id.</u> Accordingly, the proper disposition of this appeal is a remand "with directions to the parties to properly submit the issue for adjudication…either by a motion for summary judgment or by an evidentiary hearing." <u>Id.</u>

7

*Conclusion*

There is quite a significant degree of uncomfortable irony in disposing of a claim challenging the fairness of a hearing before a fact-finding tribunal by dispensing with a hearing on the merits of the challenge. Beyond that, however, the principle at risk in the dissent is of more general importance. We should be very wary of unduly expanding our role as primarily a court of review.

Patricia L. Cohen, Judge



# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

RUTH CAMPBELL, ET AL., )
)
    Appellants, )
) ED99622
v. )
)
COUNTY COMMISSION OF ) Appeal from the Circuit Court
FRANKLIN COUNTY, ) of Franklin County
)
    Respondent, ) Honorable Robert D. Schollmeyer
)
and )
) Filed: July 22, 2014
UNION ELECTRIC COMPANY, D/B/A )
AMEREN MISSOURI, )
)
    Respondent. )

## CONCURS IN RESULT

I concur in transfer to the Missouri Supreme Court only. I respectfully dissent from the majority's underlying analysis, and I would affirm.

This appeal reaches us after certiorari review by the circuit court of a legislative zoning decision of the Franklin County Commission (Commission). This case is procedurally complex, in that certiorari is a unique procedure at common law, and here a statutory certiorari procedure controls. Added to that, the trial court's decision here in dismissing one count after receiving the record of the Commission and determining one

count on the merits is anomalous to a certiorari procedure. This case therefore differs procedurally than the vast majority of cases we handle. Essentially, the majority's complaint with my opinion is that I fail to treat the trial court's dismissal on review here as we do every other dismissal for failure to state a claim for relief. However, that is precisely my point: this case is not typical, in that we do not sit here as the first court of review. Given this fact and circumstances particular to this case, I believe we can exercise *de novo* review of the legal issue raised in Count I, in the same way we would had the trial court entered a judgment on the merits.[1] Legal precedent in analogous situations contributes to my belief that a merits decision here is appropriate, is permitted by law, and serves justice—though it is not required.[2]

Because of the legal and procedural complexity here, before discussing the present case and analyzing the points on appeal, I begin with a background of certiorari procedure at common law and under the statute applicable here.

Legal Background

1.  Common Law Certiorari Procedure in Circuit Courts

Review by writ of certiorari is a historic common law remedy by which a circuit court can choose to review a decision of a lower tribunal. However, certiorari review in a Missouri circuit court is rare and only available in very limited circumstances. Also, a circuit court sitting on certiorari review is engaging in the first appeal of a lower

---

[1] The majority characterizes my focus on *de novo* review as an attempt to function as a trial court, whose role is to hear evidence and make the original determination. However, as will be made plain by my analysis, I advocate *de novo* review not as a vehicle to improperly make an original determination as an appellate court, but because that is our standard of review regarding issues of law raised in appeals from county commission decisions reviewed by circuit courts.

[2] In this respect, to the extent the majority implies I advocate a rule of ignoring the trial court's opinion in every instance and that I purport to take the place of the trial court here, the majority overstates my position.

2

tribunal's decision, and in that sense, the circuit court in such a case resembles the court of appeals.

At common law, a circuit court may choose to grant certiorari review only of judicial or quasi-judicial decisions of a lower tribunal, such as an administrative agency or a local governmental body.[3] A party who has been aggrieved by a lower tribunal's decision can request certiorari review in the circuit court only regarding issues of the lower tribunal's jurisdiction or when no other means of appeal is available.[4] Also, the issues considered by a circuit court on certiorari review are limited to questions of law appearing on the face of the record—specifically, whether the lower tribunal's action was legal.[5]

The certiorari review process is initiated by a relator: a party who was aggrieved by the decision of the lower tribunal. The relator files a petition for a writ of certiorari; essentially, a request for review. A circuit court usually has discretion either to grant the writ request or to deny it.[6] When a circuit court chooses to grant the request, it issues a writ of certiorari directed to the lower tribunal. The writ orders the lower tribunal to

---

[3] See Gash v. Lafayette County, 245 S.W.3d 229, 233 (Mo. banc 2008) (citing 14 C.J.S. Certiorari Section 8 (2006)).

[4] See State ex rel. Gentry v. Westhues, 286 S.W. 396, 398 (Mo. banc 1926); State ex rel. Kansas & T. Coal Ry. v. Shelton, 55 S.W. 1008, 1012 (Mo. 1900) (certiorari lies where "inferior tribunal acts without jurisdiction, or in excess of its jurisdiction, or when within its jurisdiction and the action of such inferior tribunal cannot be reviewed on appeal or writ of error").

[5] See Shelton, 55 S.W. at 1012 (quoting State v. Dobson, 36 S.W. 238, 243 (Mo. 1896); State v. St. Louis Court of Appeals, 12 S.W. 661, 662 (Mo. 1889)) ("Our inquiries . . . are limited, under the common-law practice that prevails in this state, to such errors as are of record and jurisdictional in their character. . . . It must clearly appear that the [lower tribunal] has exceeded its legitimate powers").

[6] See State ex rel. Evans v. Broaddus, 149 S.W. 473, 476 (Mo. 1912) (noting writ of certiorari does not issue as matter of right), cited in 14 AM. JUR. 2d Certiorari Section 8 (2014) (issuance of writ of certiorari rests on sound discretion of court). Only when the Attorney General requests a writ of certiorari does it issue as a matter of right. See State ex rel. Nixon v. Dierker, 22 S.W.3d 787, 788 n.1 (Mo. App. E.D. 2000).

deliver its record in the case for review.[7] This delivery of the record demanded by the writ is often called a "return."[8]

Once the writ has issued, directing the lower tribunal to file its return, the lower tribunal has two options in responding: (1) it may file the return as requested, or (2) it may move to quash the writ as improperly granted,[9] for example, because the writ petition fails to state a claim upon which relief can be granted. A motion to quash a circuit court's writ of certiorari asserting this defense is therefore akin to a motion to dismiss for failure to state a claim for relief in a typical civil case.[10] Because a circuit court issues a writ of certiorari *ex parte*, the lower tribunal's first opportunity to respond to the writ petition comes when it receives the writ directing the tribunal to file its record.[11] If the lower tribunal files a motion to quash for failure to state claim upon which relief can be granted, as with a typical motion to dismiss asserting that defense, the circuit court then examines the allegations contained in the writ petition alone to determine whether it adequately states a claim for relief.[12]

However, where the lower tribunal chooses to file its return in the circuit court in response to the writ, this act of filing the return (record) generally constitutes a waiver at

---

[7] State ex rel. Pub. Serv. Comm'n v. Dally, 50 S.W.3d 774, 776 (Mo. banc 2001) (quoting BLACK'S LAW DICTIONARY 220 (7th ed. 1999)).

[8] State ex rel. St. Louis Union Trust Co. v. Neaf, 139 S.W.2d 958, 962 (Mo. 1940); 14 C.J.S. Certiorari Section 61 (2014).

[9] State ex rel. Modern Finance Co. v. Bledsoe, 426 S.W.2d 737, 740 (Mo. App. 1968).

[10] I note, however, that like a motion to dismiss in a typical case, a motion to quash a writ of certiorari can assert any number of defenses. Thus, depending on the defense asserted in the motion, the scope of circuit court's determination (as well as review by the court of appeals), varies. Complicating the matter further in the certiorari context is the fact that at times, after deciding the legal issues raised in the certiorari petition on the merits, if a court determines the lower tribunal's action was legal, the court "quashes" the writ. E.g., State ex rel. Gardner v. Harris, 227 S.W. 818, 823 (Mo. banc 1920) (citing State ex rel. Hayes v. Ellison, 191 S.W. 49, 55 (Mo. banc 1916)). In such a case, quashal of the writ is actually a determination of the legal issues on the merits.

[11] Modern Finance Co., 426 S.W.2d at 740. This is why the proper time to file a motion to quash for failure to state a cause of action is upon receiving service of the writ.

[12] Id.; see also State ex rel. & to Use of Berra v. Sestric, 159 S.W.2d 786, 787 (Mo. 1942) (citing State ex rel. Underwood v. Fraker, 68 S.W. 576 (Mo. 1902)).

4

common law of the ability to contest irregularities in the issuance of the writ.[13]  Likewise,

once the circuit court has the record of the lower tribunal, courts generally hold that the

circuit court must examine the record and consider the merits of the legal issues raised,

rather than quashing the writ because of any error in issuance.[14]

---

[13] See State ex rel. Davidson v. Caldwell, 310 Mo. 397, 408 (1925) (holding filing of return by respondents "constituted a general appearance to the action on the merits, and waived any defects in the issuance of the writ").  In Davidson, the respondent filed the return after the court denied an initial motion to dismiss; however, the respondent later attempted to attack issuance of the writ because it had improperly been issued by the clerk instead of the judge.  The Missouri Supreme Court held that the respondent had waived that argument by filing the return.  Davidson, 310 Mo. at 408.  Additionally, in State ex rel. Modern Finance Co. v. Bledsoe, the court of appeals stated the following:

> In the absence of a motion to quash the writ, *a respondent has no choice not*
> *to certify his record as ordered.  In that posture of the case one looks only*
> *to the record* to determine whether petitioner is entitled to the relief asked;
> there is then no occasion to refer to the petition.

426 S.W.2d at 740 (emphasis added).  Together these cases suggest that a defense must be raised immediately in response to the writ, and the filing of the return instead constitutes waiver; an acquiescence to the circuit court's determination of the legal issues in light of the record.  At the same time, courts have permitted respondents in limited instances to raise jurisdictional defects even after the filing of the return. In State ex rel. Schneider v. Stewart, the court of appeals reiterated the principle that motions to quash must be filed before the return, but then declined to apply it, recognizing a distinction in the case before it because the defense raised was one of jurisdiction, which could not be waived.  575 S.W.2d 904, 909 (Mo. App. 1978) ("[t]he practice at common law (which persists) requires a respondent summoned by certiorari either to make return as mandated or to move quashal of the writ [b]efore return").

[14] See Modern Fin. Co., 426 S.W.2d at 740 (where record certified, court looks only to the record to determine legal issues raised).  Accordingly, once the respondent files the return, as a general rule the circuit court must move on to the merits of the legal issue.  Accord State ex rel. McClain v. Burney, 26 S.W.2d 814, 815 (Mo. App. 1930) (per curiam) (noting parties treated motion to dismiss writ of certiorari after transcript filed "as a pleading raising an issue upon the merits of the case"); 14 AM. JUR. 2d Certiorari Section 8 (2014) ("The discretionary stage passes when the writ issues and the record of the inferior [tribunal] is certified, and the [circuit] court must thereafter hear and determine the case").

Again, courts have indicated a limited distinction where the issue raised is jurisdictional in nature, while at the same time affirming the general rule.  For instance, in State ex rel. Powell v. Shocklee, the Missouri Supreme Court stated that respondents must be able to attack the "question as to whether the writ was improvidently granted" at the time "when [they] are brought into court," because the writ issues *ex parte*.  141 S.W. 614, 616 (Mo. 1911).  This is consistent with the rule that respondents must file a motion to quash as their first response, before filing a return.  The Powell court went on to explain, "[t]he weight of authority favors the right of respondents to attack by proper motion the regularity of the issuance of the writ," 141 S.W. at 616, saying nothing directly about the timing of the motion as it relates to the filing of the record, but notably citing State ex rel. Underwood v. Fraker, 68 S.W. 576, 576 (Mo. 1902), where the court stated, "a writ of certiorari issued by this court could, *before return made*, be quashed on motion made in this court."  Id. (emphasis added).  At the same time, the Powell court chose not to apply this rule to every motion to quash filed after return, because the issue in Powell was standing, which is jurisdictional and cannot be waived.  141 S.W. at 616.  State ex rel. Lunsford v. Landon is another case in which the Missouri Supreme Court quashed a writ for lack of jurisdiction after the circuit court had determined the legal issues on the merits.  265 S.W. 529, 532 (Mo. banc 1924).  Thus, while courts acknowledge the general rule, this exception exists for jurisdictional defects, which require the writ to be quashed regardless of when raised, resulting in termination of the case.

5

The circuit court does not re-weigh the evidence regarding the decision of the lower tribunal, but only reviews any issues concerning the legality of the decision appearing from the record.[15] At that point, if the circuit court finds the decision was legal, it allows the lower tribunal's decision to stand.[16] If the court concludes the decision was illegal, the court quashes the record of the lower tribunal and the circuit court has no power to do more.[17] This is similar in the typical civil context to the court of appeals vacating the judgment of the lower court and remanding for further proceedings.

After any decision by the circuit court on a writ of certiorari, the non-prevailing party may appeal to the court of appeals. Where the circuit court has granted a motion to quash a writ of certiorari before the return has been filed, appellate review in this Court is also akin to our review of a circuit court's grant of a motion to dismiss: we look solely to the petition to determine whether it adequately states a claim for relief.[18]

---

[15] State ex rel. Weinhardt v. Ladue Prof'l Bldg., Inc., 395 S.W.2d 316, 321 (Mo. App. 1965) ("At common law, certiorari proceedings are not heard *de novo* and the reviewing court does not weigh the evidence, but deals only with questions of law that appear on the face of the record"); see also State ex rel. Nance v. Bd. of Trustees for Firefighters' Ret. Sys. of Kansas City, Mo., 961 S.W.2d 90, 93 (Mo. App. W.D. 1998) (writ of certiorari "presents only questions of law on the record brought up by the return and does not permit consideration of issues of fact").

[16] Sometimes such a decision also results in quashal of the writ. See e.g., Gardner, 227 S.W. at 823.

[17] Heinrich v. Quinn, 168 S.W.2d 1054, 1059 (Mo. banc 1943) (ordinarily, relief on certiorari review is only quashal of record below in whole or part, without substitution of new judgment or order); State ex rel. St. Louis County v. Evans, 139 S.W.2d 967, 968 (Mo. banc 1940) ("all that can be done under [certiorari] is either to quash or to refuse to quash the record of which complaint is made"); State ex rel. Tolliver v. Bd. of Pub. Serv. of City of St. Louis, 453 S.W.2d 622, 623 (Mo. App. 1970) (superior court determines jurisdictional issue from face of return and either quashes return or upholds lower tribunal's action).

[18] This is the standard of review acknowledged by the majority and applied to Point I, the appeal of the trial court's dismissal of the first count in the writ petition here. In fact, most of the cases cited by the majority regarding appellate review of the propriety of a circuit court's judgment granting a motion to quash a writ of certiorari consist of appellate review of a circuit court's quashal of a writ before the responding party had filed the return (record). See Berra, 159 S.W.2d at 787 (writ of certiorari quashed on motion before return made); State ex rel. Callahan v. Hess, 153 S.W.2d 713, 714 (Mo. 1941) (same); State ex rel. Conway v. Hiller, 180 S.W. 538, 542 (Mo. 1915) (same); State ex rel. Pruitt-Igoe Dist. Cmty. Corp. v. Burks, 482 S.W.2d 75 (Mo. App. 1972) (trial court quashed writ because petitioners failed to follow proper procedure, no mention of return); State ex rel. Croy v. City of Raytown, 289 S.W.2d 153, 155 (Mo. App. 1956) (writ of certiorari quashed on motion before return made). While I agree this standard of review is proper when a circuit court has quashed a writ upon a motion asserting that the petition fails to state a claim for relief before the return (record) is filed, I disagree that such standard of review is proper after the return (record) has been filed. See *infra* n.18 and accompanying text.

6

However, if an appeal to this Court is taken after certiorari review in the circuit court was conducted on the merits of the legal issues in light of the lower tribunal's record (after return), appellate review is conducted in the same manner as in the circuit court: by taking the record as it is and determining the legal questions raised.[19] The appellate court owes no deference to the circuit court's findings in such a case, but rather independently reviews the legality of the lower tribunal's decision.[20] This is similar to our standard when reviewing a circuit court's review of an agency decision in a contested case, in which we examine the decision of the agency rather than the findings and conclusions of the circuit court.[21] Thus, the scope of our review of a circuit court's certiorari decision depends upon at what stage in the certiorari process a party appealed, just as review in any case depends on the stage of the proceedings below.

---

[19] See State ex rel. Nance v. Bd. of Trs. for Firefighters' Ret. Sys. of Kansas City, Mo., 961 S.W.2d 90, 93 (Mo. App. W.D. 1998) (stating court of appeals' review and circuit court's review is the same: "we simply consider questions of law brought up on the record"). This is similar to any case requesting review of questions of law. This Court always reviews questions of law de novo. This is also the standard of review employed by the other cases cited by the majority, when in those cases the return (record) had been filed with the circuit court before the court quashed the writ, indicating the circuit court's quashal was of the type that is a judgment on the merits. See Waller v. Everett, 52 Mo. 57, 58 (1973) (review of quashal of writ after return made; appellate court considered record and affirmed); State ex rel. Auto Fin. Co. v. Collins, 482 S.W.2d 529, 531 (Mo. App. 1972) (responding party filed return and trial court denied relator's petition; court of appeals re-examined question of jurisdiction and question of law raised in petition); Village of Grandview v. McElroy, 9 S.W.2d 829, 832 (Mo. App. 1928) (responding party made return and circuit court thereafter quashed writ; appellate court reviewed legality of city's action). One case cited by the majority does contain a scenario in which the responding party filed the return, the trial court later quashed the writ upon a motion that the petition was inadequate for several reasons, and the appellate court affirmed because there was no jurisdiction as the petitioners had an adequate remedy elsewhere. Sch. Dist. No. 2, Tp. 24, Range 6 E., Butler County v. Pace, 87 S.W. 580, 583 (Mo. App. 1905). This seems to be one of the limted instances in which instead of proceeding to the merits in light of the lower tribunal's record already in front of the court, the court chose to quash the writ for lack of jurisdiction, which terminated the case.

[20] Cf. State ex rel. Reorganized Sch. Dist. R-9 of Grundy County v. Windes, 513 S.W.2d 385, 390 (Mo. 1974) (reciting and applying same standard of review as circuit court, effectively exercising de novo review of legal questions raised by the lower tribunal's record with no reliance on circuit court findings).

[21] See Garozzo v. Mo. Dept. of Ins., Fin. Insts. & Prof'l Registration, Div. of Fin., 389 S.W.3d 660, 663 (Mo. banc 2013). Similarly, the Missouri Supreme Court, when sitting as it does most often, as the second level of appeal, owes no deference to this Court's judgment but independently reviews the judgment of the trial court.

7

## 2. Statutory Writ Procedure Under Section 64.870.2[22]

The common law procedure described above applies to any writ of certiorari, except where a statute changes this procedure, the statute controls.[23] The writ of certiorari issued by the trial court here was pursuant to Section 64.870.2. Section 64.870.2 broadens the circuit court's scope of certiorari review, which in turn can affect appellate review. Specifically, whereas a common law writ of certiorari is available to review the legality only of judicial or quasi-judicial decisions, Section 64.870.2 specifically creates an opportunity for certiorari review of legislative zoning decisions made by county commissions.[24] The statute states that a party aggrieved by a zoning decision may file a petition for a writ of certiorari in the circuit court, raising claims that the decision of the county commission was illegal. Additionally, the statute requires that once a party files a petition for a writ of certiorari, the circuit court does not have discretion to deny it, but rather must direct a writ to the county commission.

From there, the statute is silent as to the response of the county commission. Therefore, as at common law, the commission may either move to quash the writ or may file its record (return) with the circuit court as directed by the writ.[25] In line with the common law, Rule 55.27(a)(6)[26] allows a responding party "in any civil case" the opportunity to raise by motion the defense that the petition fails to state a claim upon

---

[22] All statutory references are to RSMo. (Supp. 2011), unless otherwise indicated.

[23] See Gash, 245 S.W.3d at 234 (general assembly may enlarge scope of certiorari remedy); State ex rel. Sw. Bell. Tel. v. Brown, 795 S.W.2d 385, 388 (Mo. banc 1990) (writ of certiorari maintains its common law function, subject to statutory limitations).

[24] Section 64.870.2; Gash, 245 S.W.3d at 233-34 (noting Section 64.870.2 provides for review of county commission's legislative actions).

[25] See Sw. Bell. Tel., 795 S.W.2d at 388 (writ of certiorari maintains common law function except where altered by statute).

[26] All rule references are to Mo. R. Civ. P. (2011), unless otherwise indicated.

8

which relief can be granted.[27] Thus, I believe a county commission receiving service of a writ of certiorari under Section 64.870.2 would be permitted to respond to the writ by filing a motion under Rule 55.27(a)(6).[28]

Where the commission chooses to file its record (the return) with the circuit court, at this point in the process, Section 64.870.2 also enlarges the scope of the circuit court's certiorari review compared to the common law. Under the statute, the circuit court is not confined simply to determining the issues of legality raised by the county commission's record, but rather the circuit court may choose to take additional evidence from the parties. The statute then provides that the circuit court may reverse, affirm, or even modify the decision of the county commission.[29] Thus, as at common law, the statute contemplates a decision on the merits once the circuit court has the record of the commission.[30] Moreover, the circuit court's review under this statute is much broader than common law certiorari review. This review more closely resembles circuit court review of administrative decisions under Missouri's Administrative Procedure Act, which also allows a circuit court to take additional evidence and modify agency rulings.[31]

---

[27] Specifically, Rule 55.27(a) provides, "Every defense, in law or fact, to a claim in any pleading, . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion." Subsection (6) lists "[f]ailure to state a claim upon which relief can be granted" as one of those defenses.

[28] While the majority holds that the Missouri Rules of Civil Procedure may not be used, I disagree, especially because the writ of certiorari here is a statutory creation. The case cited by the majority states, "[i]t is only where the statute is silent on procedural matters that the rules of civil procedure may be employed." Sw. Bell Tel. v. Brown, 795 S.W.2d 385, 389 (Mo. banc 1990). I see nothing in this case prohibiting the application of Rule 55.27 in the absence of a statutory limitation or conflict with a statutory procedure. Because the statutory procedure here does not specifically prescribe the response of the county commission, I fail to see why Rule 55.27 would not apply.

[29] I note here that this provision allowing a court to modify county commission decisions has raised separation of powers concerns with respect to legislative decisions. See generally, Michael T. White, County Zoning Statutes and Problematic Land Use Decisions, 59 J. Mo. B. 66 (2003).

[30] However, it also appears that, as at common law, the court could still choose to grant challenges to jurisdiction after it has received the lower tribunal's record (return).

[31] Section 536.140.4, 5. At least one court has acknowledged a similarity between review under Section 536.140 and review of quasi-judicial zoning decisions by certiorari under Section 64.660.2, which is nearly identical to Section 64.870.2. See State ex rel. Cass County v. Dandurand, 759 S.W.2d 603, 604 (Mo. App.

In summary, though Section 64.870.2 expands the scope of the certiorari remedy, it does not change the common-law general rule favoring a decision on the merits of the legal issues raised once a lower tribunal files its return. With this certiorari context in mind, I turn to the circuit court's ruling below and its effect on our standard of review.

## Procedural Background

Here, given the just mentioned legal context, the trial court made an anomalous ruling. In the present case, the Commission's first response to the writ of certiorari was to submit the full record of its proceedings (the return) in adopting the disputed zoning amendment (Amendment) to the trial court for review. The Commission simultaneously filed an answer to the petition, in which it asserted as an affirmative defense that the petition failed to state a claim upon which relief could be granted.

After the Commission had filed its return and answer with the trial court, Ameren sought to intervene, which the trial court allowed. Ameren and the Commission then each filed their own motions for judgment on the pleadings under Rule 55.27(b), or alternatively, motions to dismiss for failure to state a claim under Rule 55.27(a)(6), regarding Counts I, III, IV, V, and VI of Appellants' petition.[32] The trial court subsequently entered an order stating simply that the court granted Ameren's and the Commission's motions to dismiss. Ameren and the Commission also moved for appointment of a referee to take additional evidence, which Appellants opposed and the

---

W.D. 1988) (noting that in context of review of grant of special use permit, scope of review under Section 64.660.2 was no different than review under Section 536.140 of Missouri Administrative Procedure Act). Section 64.660.2 applies to second and third class counties, whereas Section 64.870.2 applies to alternative county planning and zoning.

[32] Appellants appeal only the trial court's dismissal of Count I. Counts III and IV raised the same arguments as Counts I and II, respectively, but requested declaratory and injunctive relief under Section 536.150. Counts V and VI also made the same two arguments, but requested review as a contested case under Sections 536.100 to 536.140.

trial court eventually denied.[33] Finally, after extended briefing and argument by the parties regarding the remaining count of Appellants' petition, Count II, the trial court entered its findings and conclusions upholding the action of the Commission.

What is anomalous about these rulings is that, as outlined above, under common law certiorari procedure and unaltered by Section 64.870.2 in this respect; once the circuit court has the lower tribunal's record (the return), it should consider the merits of the legal issues rather than the adequacy of the petition. Especially here, because the trial court undertook a determination of the legal issue raised in Count II, it is anomalous that it at the same time declined to consider the record as it related to Appellants' argument in Count I.[34] I believe this fact, along with the standard of appellate review for legislative decisions, requires a different standard of review here than that applied by the majority.

### Standard of Review

Specifically, I disagree with the majority that we should apply separate standards of review to Counts I and II of Appellants' petition, despite the fact that the trial court entered different judgments for each. This is because certiorari procedure and appellate review of a legislative decision are both fundamentally different than appellate review in

---

[33] While Appellants argue they opposed this motion because Ameren improperly sought to supplement the record regarding Count II, the record on appeal contains neither the motion for appointment of the referee nor any of Appellants' responses. In any event, Ameren filed its motion for appointment of a referee while its motion for judgment on the pleadings was under advisement, and before the trial court's disposition of any claims. Additionally, nothing prevented Appellants from requesting appointment of a referee to take additional evidence regarding Count I.

[34] Research has revealed no case in which a circuit court quashed a writ of certiorari in part, but then nevertheless considered the lower tribunal's record and made a determination as to whether the lower tribunal's action was legal in some other respect. In other cases granting quashal after the filing of the return (record) for jurisdictional reasons, the case terminates upon quashal of the writ. Though failure to state a claim for relief is a jurisdictional issue, Adkisson v. Dir. of Revenue, 891 S.W.2d 131, 132 (Mo. banc 1995), and a circuit court could under precedent choose to grant relief on this basis even after the return is filed; I believe here, this should not be one of the limited circumstances in which a circuit court does so, simply because the trial court here had to review the record regarding Count II. Precedential emphasis on certiorari review of legality issues after receipt of the return leads me to see this piecemeal approach, where quashal does not terminate the case altogether, as inconsistent with certiorari review and improper here.

11

typical civil cases where a circuit court is not sitting in review but is in the position of original adjudication. As stated previously, I believe the trial court should not have dismissed Appellants' writ petition in part while at the same time considering the Commission's record. However, while I agree with the majority in the limited respect that dismissal was improper, I do not believe we need to remand here. I would instead find that we may review *de novo* both of the legal questions raised by Appellants' petition, for two reasons: (1) both certiorari procedure generally and procedure for review of a county commission's zoning decision require us to review the decision of the Commission and any legal issues appearing from the face of the record with no deference to the trial court's judgment, and (2) as a practical matter, review of this issue on the merits preserves judicial economy here and is permitted under Rule 84.14.

1. Appellate Review of Certiorari Rulings and Legislative Decisions

Section 64.870.2 states that an appeal may be taken from the circuit court's decision on certiorari as in other civil cases.[35] In other civil cases involving appeals from decisions of county commissions that have been reviewed by the circuit court in certiorari, the scope of appellate review is confined to the legality of the Commission's action, and on this issue we pay no deference to the circuit court's order. See State ex rel.

---

[35] The majority relies on this portion of the statute to conclude that we must therefore review the trial court's dismissal of Count I as we would any other dismissal, overlooking the fact that certiorari procedure is altogether different. Section 64.870.2 merely creates a right of appeal in this Court, but it does not mean we do not tailor the standard of review to the type of case we face, as we would in any other appeal. Here, we have an appeal of a legislative zoning decision on certiorari, a decision that was ultimately affirmed by the trial court. I believe the applicable standard of review in this type of case allows us to consider the court's judgment as a whole rather than reviewing the disposition of each count separately, as in a typical appeal. Contrary to the majority's assertion, I do not advocate a standard of review different than what we would normally employ in any other dismissal or quashal in a certiorari action. I simply believe the appropriate standard of review in such actions depends largely on the stage at which the writ was quashed. See *supra* nn.17-18.

12

Dotson v. County Comm'n of Clay County, 941 S.W.2d 589, 592 (Mo. App. W.D. 1997) (reviewing certiorari proceeding under Section 64.660[36]).

Similarly, I also note that in general, appellate review of legislative zoning decisions of a local governmental body (not necessarily by writ of certiorari), involves a *de novo* determination of the legality of the decision of that governmental body. See Fairview Enters., Inc. v. City of Kansas City, 62 S.W.3d 71, 76 (Mo. App. W.D. 2001) (quoting Lenette Realty & Inv. Co. v. City of Chesterfield, 35 S.W.3d 399, 405 (Mo. App. E.D. 2000)) ("[s]ince zoning and refusal to rezone are legislative acts, we review *de novo* any challenges to their validity . . ."). Again, in reviewing such cases, we do not defer to the circuit court's initial ruling passing upon the legality of the local governmental body's decision.[37] In that sense, the outcome of the case at the circuit court level generally has no bearing on our review. The question is whether a circuit court's dismissal of part of the certiorari action changes this basic nature of review.

Because the procedural posture of a certiorari case under Section 64.870.2 resembles that of an administrative appeal, some principles from the administrative context are instructive.[38] In a case considering the propriety of the appellate court's determination that the circuit court should have dismissed a petition for review for failure to state a claim, the Missouri Supreme Court observed the following:

---

[36] While the court did not specifically cite Section 64.660.2, the court applies Section 64.670, which is part of the statutory scheme establishing procedures for second and third class counties. Dontson, 941 S.W.2d at 594 n.1. Within that scheme, Section 64.660.2 provides for certiorari review, and it is nearly identical to Section 64.870.2, which applies to the present case.

[37] However, once we have conducted review of the lower tribunal's decision, procedurally, we affirm or reverse the circuit court's judgment accordingly. See State Committee of Marital & Family Therapists v. Haynes, 395 S.W.3d 67, 73 n.3 (quoting Bird v. Mo. Bd. of Architects, Prof'l Eng'rs, Prof'l Land Surveyors & Landscape Architects, 259 S.W.3d 516, 520 (Mo. banc 2008)).

[38] Cf. State ex rel. Cass County v. Dandurand, 759 S.W.2d 603, 604 (Mo. App. W.D. 1988) (noting that in context of review of grant of special use permit, scope of review under Section 64.660.2—a section almost identical to Section 64.870.2—was no different than review under Section 536.140 of Missouri Administrative Procedure Act).

13

> At the outset, it should be noted that the court of appeals' focus on the petition for review is misplaced because the petition plays little or no role in the appellate court process. When a circuit court's judgment is appealed, the appellate court does not review the circuit court's decision, but rather the agency decision . . . . Accordingly, the circuit court's judgment—and of course the petition for review that began the circuit court process—is of no particular interest when the matter is appealed[.]

Bird v. Mo. Bd. of Architects, Prof'l Eng'rs, Prof'l Land Surveyors & Landscape Architects, 259 S.W.3d 516, 520 (Mo. banc 2008) (citations omitted).[39] Accord Reed v. City of Springfield, 758 S.W.2d 138, 146 (Mo. App. S.D. 1988) (holding that if circuit court's review of agency decision reaches correct result, "appellate court should not reverse . . . solely on the basis of an error of law committed by the circuit court which is unrelated to the merits of the appeal") (citing Evangelical Ret. Homes of Greater St. Louis, Inc. v. State Tax Comm'n of Mo., 669 S.W.2d 548, 552 (Mo. banc 1984) (circuit court's failure to apply appropriate standard of review did not merit reversal; appellate court applied appropriate standard of review to agency decision, reaching same result)). After determining that the petition was in fact sufficient, the Bird Court went on to review the decision of the administrative agency on the merits based on the agency's record. Id. at 520-26.

Similarly here, because we review the decision of the Commission, and we have its full record; the adequacy of the petition, as well as the circuit court's determination of

---

[39] I omit the phrase, "the [agency]'s findings and conclusions," in the quoted language from Bird to avoid redundancy. I disagree this phrase makes Bird distinguishable from the present case. The Commission here also made findings and conclusions regarding its adoption of the Amendment, which are acknowledged by the majority at note 24 and set out in the preamble to the Amendment. Specifically, regarding the fairness of the hearing, the Commission summarized the hearing process, including that the hearing was continued "in order to give everyone a chance to be heard." The Commission noted that it "was presented with hundreds of pages of testimony and evidence to review and consider," and that the Commission did in fact complete "hours upon hours of review and analysis," both as individual commissioners and collectively. The Commission relied on these findings for its authority to adopt the Amendment—clearly the Commission concluded its process had been fair.

14

its adequacy, have no practical effect on our review.[40] Thus, I would conclude that we should review the record of the Commission and determine any issues of legality *de novo*, regardless of the circuit court's resolution of each argument in Counts I and II.[41]

## 2. Judicial Economy and Rule 84.14[42]

Additionally, even if we were to review the trial court's dismissal of Count I separately rather than the decision of the Commission as a whole; as a practical

---

[40] The majority characterizes this as an attempt to improperly function as a circuit court in making an original determination, relegating the circuit court's review to a mere formality. First, the original adjudication here took place in front of the Commission, which heard evidence and adopted the Amendment. While the trial court here was permitted to take additional evidence, creating the possibility of an original determination in light of new evidence, the court declined to do so. The ability to present additional evidence is not a right granted to Appellants but rather an option within the discretion of the court. Section 64.870.2 ("the court . . . *may* appoint a referee to take additional evidence" (emphasis added)). Thus, the trial here chose to function only as a court of review. Accordingly, we sit as the second level of review. In such cases, as most often when the Missouri Supreme Court takes an appeal from this Court, there is no mention of the intermediate court's decision nor necessity for correcting any errors therein, when the focus of the review is the original adjudication. That is our function here, and choosing to directly review the decision of the Commission no more relegates the trial court's decision to a mere formality here than our transfer to the Missouri Supreme Court does to the present discussion.

This procedural posture also distinguishes the present case from State ex rel. Schaefer v. Cleveland, 847 S.W.2d 867 (Mo. App. E.D. 1982), relied on by the majority concurring opinion. Schaefer concerns an action for a writ of mandamus, a different procedure at its core than certiorari. When the circuit court in Schaefer dismissed the mandamus petition, it had only the petition and the respondents' return. The return in the mandamus context consists of the answer to the petition, rather than the certified record of proceedings below. Id. at 870; State ex rel. Consol. Sch. Dist. No. 1, Miss. & New Madrid Counties v. Jones, 8 S.W.2d 66, 67 (Mo. banc 1928) (return takes place of answer). Thus, Schaefer is more analogous to a typical dismissal, in which the court has only the pleadings in front of it and determines the petition is insufficient.

[41] This is because review by certiorari requires consideration of all issues of legality on the face of the record, not only the issue of whether the Amendment was fairly debatable. Ameren made a related argument to mine here, stating that the trial court's dismissal was "logically moot." The majority attacks this argument as unsupported because it referenced Rule 84.04(d)(2), which addresses appellate briefing requirements. Maj. op. at 9. However, rather than appealing to the rule as prescribing the standard of review, Ameren pointed to the *logic* of the rule, which reflects the standard of review in administrative decisions, requiring that appellants should identify the administrative ruling challenged, not the action of the trial court. Similarly here in review of a legislative zoning decision, because we review the Commission's record and the legality of the Commission's action, I agree we should focus on *de novo* review of the legality of the Commission's action, rather than on the method by which the trial court disposed of each argument in arriving at its decision to affirm.

[42] Again, the majority argues reliance on the rules of civil procedure is inappropriate because common law certiorari procedure provides a complete procedure for review. However, the controlling procedure here is statutory. Further, even assuming the majority's rule is valid, neither the statutory writ process nor the common law specifically limit the remedies an appellate court may provide once it has determined the issues on appeal according to the appropriate standard of review. In the same way we rely on Rule 83 for authority to transfer this case to the Missouri Supreme Court rather than rendering a judgment; I would rely on Rule 84 for authority to dispose of it finally.

consideration, in light of the trial court's anomalous dismissal of Count I, I believe we can review the record that was in front of the trial court and under Rule 84.14 enter the judgment the court should have, in the interest of preserving judicial economy and achieving a swift outcome. The majority points out that Section 64.870.2 contemplates that Appellants should have a unique opportunity for review by the trial court. At the same time, as explained above, the law contemplates that we review the decision of the Commission rather than the trial court. I would conclude therefore that because we have the same record in front of us as the trial court did,[43] and the only issues on appeal are purely legal, we should rule on those issues. Additionally, because this case affects the enforcement of the Amendment, which was not stayed pending the outcome of this appeal, I believe determining the issues at this stage is in the interest of swift justice.

The Western District Court of Appeals did this in the similar context of an administrative appeal, in which the circuit court had dismissed the petition for review, finding the agency lacked subject matter jurisdiction to make its decision. Psychiatric Healthcare Corp. of Mo. v. Dep't of Soc. Servs., Div. of Med. Servs., 996 S.W.2d 733, 735 (Mo. App. W.D. 1999). The court reasoned the following:

---

[43] The majority also points out that the statute contemplates that the trial court is to have an opportunity to take additional evidence and to modify the decision of the Commission under Section 64.870.2. As noted, *supra*, the decision to take additional evidence is discretionary under the statute, and here, the trial court denied Ameren's and the Commission's motions to appoint a referee to take additional evidence. Appellants never requested to supplement the record with additional evidence. Thus, there is no reason to believe a remand would be necessary to take additional evidence here. Additionally, contrary to remand after reversal of a typical dismissal, there is no possibility of this case progressing to the point of a jury trial upon remand, as certiorari procedure is purely a review of legal issues by a court with no necessity for a fact-finder. Therefore, upon a second appeal, this Court would have in front of it the same record. Further, the trial court certainly had a full opportunity to modify the Amendment during its merits consideration of Count II and instead chose to affirm the Commission's decision without modification. There is no reason to believe the court would decide otherwise upon remand, nor are we required by Section 64.870.2 to give the trial court a second opportunity to consider modification. Thus, the majority's assertion that the procedure I advocate would "permanently foreclose" Appellants' opportunity to present additional evidence or obtain modification from the trial court is unfounded.

16

> The circuit court, while specifically adopting the findings of the [agency], did not rule on the merits of [the] appeal. One option would be to return the cause to the circuit court for a ruling, but since the trial court's review is the same as this court's under Section 536.140, and since the only determination to be made is the legal conclusion reached under the facts of this case (there being no dispute as to the facts), this court opts, in the interest of judicial economy and to expedite this matter, to rule on the appeal.

Id. at 737 (citing Foremost-McKesson, Inc. v. Davis, 488 S.W.2d 193, 196 (Mo. banc 1972) (determining no constitutional issue presented; choosing nevertheless to decide case rather than remand to court of appeals and then transferring back prior to opinion, as enforcement of challenged rules was delayed pending suit)).

Additionally, Rule 84.14 allows an appellate court to "reverse or affirm the judgment or order of the trial court . . ., or give such judgment as the court ought to give." The rule goes on to say, "[u]nless justice otherwise requires, the [appellate] court shall dispose finally of the case." Utilization of this rule is "particularly appropriate for judgments where there is no dispute as to the facts but only a dispute as to their legal significance." Mitalovich v. Toomey, 206 S.W.3d 361, 365 (Mo. App. E.D. 2006) (citation omitted); see also DeBaliviere Place Ass'n v. Veal, 337 S.W.3d 670, 679 (Mo. banc 2011) (declining to give judgment under Rule 84.14 because it is only appropriate "in circumstances that indicate there is no further need for proceedings in the circuit court").

While Rule 84.14 is most often utilized to correct mathematical calculations in light of an appellate court's legal determinations, this is not the only appropriate use of the rule. In Bird, after determining the court of appeals erroneously dismissed the appeal and after review of the merits of the agency decision, the Missouri Supreme Court

17

concluded that the decision should be reversed. 259 S.W.3d at 526. The court noted that though it would normally affirm or reverse the decision of the circuit court, it entered its own order under Rule 84.14, because while the circuit court had also reversed the agency's decision, it had improperly remanded to the agency where no remand was necessary. Id. at 526 n.14. Thus, the Supreme Court corrected this by entering its own order reversing without remanding, employing different reasoning than the circuit court had. Id.

Similarly here, acting as a court of review, the trial court dismissed a claim that it should have determined on the merits under the circumstances. We have the same record that the circuit court had. There is no dispute as to the facts here; rather, the issues raised are purely legal. The majority would have us remand, and yet regardless of the trial court's decision upon remand, this Court will most likely face another appeal with the same record and same issues, owing no deference to the circuit court then as we do not now.[44] Rule 84.14 admonishes us to dispose finally of the case unless justice otherwise requires. In my opinion, under the circumstances here, justice would be served just as fully and certainly more expeditiously if we simply reviewed all legal issues raised by the record and disposed finally of the case now.

---

[44] Thus, contrary to attempting to adjudicate the matter for the first time here, I advocate that we engage in an appropriate review, as the second court of review, of the Commission's decision in light of the record. In this respect, State ex rel. Scott v. Smith, 75 S.W. 586 (Mo. 1903) is inapposite. There, the appellate court, in the first level of review, had determined the trial was unfair because it was conducted by a judge who had a conflict of interest. Rather than remanding for a fair trial, the appellate court entered judgment based on the evidence adduced at the tainted trial, in reliance on the common law equivalent of Rule 84.14. Contrary to Scott, where the record was tainted because of the conflict of interest; the record here is complete and the facts are undisputed. I do not attempt to utilize Rule 84.14 to make an original judgment in place of the Commission's decision based on evidence obtained at an unfair proceeding. Rather, in light of the record in front of the circuit court, I would enter the proper review judgment the circuit court should have regarding whether the proceeding contained in that record was fair. In the event we found it to be unfair, I would, in line with Scott, find that quashal of the Commission's record is appropriate rather than substituting a judgment based on a tainted process.

18

Finally, I believe this is also consistent with the logic behind allowing such review on an appeal from dismissal of a declaratory judgment action.[45] In such a case, where the trial court fails to make a declaration of the rights of the parties, and where no facts are in dispute and the issue is purely legal, the appellate court may undertake to declare the rights and duties of the parties. Nicolai v. City of St. Louis, 762 S.W.2d 423, 426 (Mo. banc 1988).[46] The same principle should apply in this case, where the trial

---

[45] In fact, in some jurisdictions, declaratory judgment is the appropriate action for review of decisions that are legislative in nature. See Gash, 245 S.W.3d at 233 (noting other jurisdictions hold that declaratory judgment is proper in review of zoning and rezoning, but Section 64.870.2 governs such cases in Missouri). See also Michael T. White, Curious County Zoning Law Gets Curiouser, 64 J. MO. B. 300, 302 (Nov.-Dec. 2008) (arguing that correct method of review of legislative acts is declaratory judgment). The fact that Section 64.870.2 is the proper procedural vehicle for challenging legislative zoning decisions in Missouri does not necessarily mean that the practical inquiry differs substantially from a declaratory judgment determination.

[46] While the circumstances present in Nicolai, namely that the defendant admitted dismissal was error and the parties asked the court to render a decision, are not present here; I maintain the principle stated is valid even in absence of these factors, as is clear when examining the authority relied on by the Nicolai court. In Magenheim v. Board of Education of the School District of Riverview Gardens, the Missouri Court of Appeals stated the principle thus:

> Where the trial court fails to make declarations settling the rights of the parties the appellate court may do so. Smith v. Pettis County, 136 S.W.2d 282 [(Mo. 1940)]; Liberty Mutual Ins. Co. v. Jones, 130 S.W.2d 945 [(Mo. banc 1939)]; Hudson v. Jones, 278 S.W.2d 799 [(Mo. App. 1955)]; King et al. v. Priest et al., 206 S.W.2d 547 [(Mo. banc 1947)]. A declaratory judgment or decree may be directed by the appellate court after the trial court has dismissed the declaratory judgment petition without a declaration. This procedure was approved by the United States Supreme Court in Cirrin v. Wallace, 306 U.S. 1 [(1939)].

347 S.W.2d 409, 418 (Mo. App. 1961) (parallel citations omitted), cited in Nicolai v. City of St. Louis, 762 S.W.2d 423, 426 (Mo. banc 1988). The majority concurring opinion contrasts these cases with City of Creve Coeur v. Creve Coeur Fire Protection District, 355 S.W.2d 857, 859-60 (Mo. 1962), which states the general rule that a motion to dismiss is not a proper vehicle to enter judgment on the merits. However, most often a motion to dismiss comes before any evidence is presented. Thus, upon determining the petition states a claim for relief, further evidence is almost always necessary to determine the legal rights of the parties, and as such, ruling on the legal issues in response to a motion to dismiss is improper. See Creve Coeur, 355 S.W.2d at 860 (noting generally that when motion to dismiss should be denied, plaintiff "should be afforded an opportunity to adduce evidence to sustain its allegations"; court found actual controversy and gave no indication that plaintiff had yet adduced any evidence). In contrast, in Nicolai and Magenheim, all evidence necessary for the declaration of rights was before the trial court as well as the appellate court, and entering judgment was therefore appropriate in light of the absence of a factual dispute. See Nicolai, 762 S.W.2d at 426 (noting no factual dispute and parties requested decision on merits); Magenheim, 347 S.W.2d at 412 (relevant salary schedules, contracts, notices, and board decisions were all attached to petition). Thus, the appellate courts in these cases chose to declare the rights of the parties rather than remand. While the courts were not required to do so and could have remanded for such a judgment, they were permitted to do so in light of the particular circumstances in those cases. Thus,

19

court failed to make the legality determination despite having the full record, the facts are not in dispute, and the issue is a purely legal one.

With this, I turn to the points on appeal, which correspond to Counts I and II of Appellants' petition. Because I believe we should review the legal issues raised regarding the Commission's record, I would review the arguments in each point as they were raised by Appellants' corresponding counts of their petition.

### Point I

Appellants argue in Count I of their petition that the public hearing conducted by the Commission was legally insufficient because it failed to allow participants to address the true subject of the Amendment, which Appellants argue was Ameren's proposed coal-ash landfill. I disagree that the hearing was legally unfair.

As the majority notes, failure to comply with a statutory hearing requirement renders a zoning ordinance void. State ex rel. Freeze v. City of Cape Girardeau, 523 S.W.2d 123, 126 (Mo. App. 1975). At the same time, as noted by the majority, there is a dearth of Missouri case law explicating the fairness threshold for such a hearing in the legislative context, as here. The majority therefore turns to the plain meaning of the word "hearing" as found in the dictionary, concluding that the legislature intended that members of the public would have an opportunity to present their sides of the case and the Commission would listen.[47] Maj. op. at 10 (quoting Merriam-Webster's Collegiate Dictionary 574 (11th ed. 2012)).

---

Nicolai and Magenheim illustrate an exception to the general rule stated in Creve Coeur where the facts are not in dispute and no further evidence is required.

[47] The majority also applies principles from the notice requirements explained by the Freeze Court as standards for determining the fairness of the discussion allowed at the hearing:

> When a statute requires a notice to be given to the public, such a notice should fairly be given the meaning it would reflect upon the mind of the ordinary layman, and not as it would be construed by one familiar with the

20

While I agree with the majority that fairness is fundamental to any public hearing, which means the hearing should afford an opportunity for affected parties to be heard regarding a proposed zoning amendment, I also believe the standard of fairness in the legislative context is influenced by the purpose of a legislative hearing, as distinct from a judicial hearing. To restate, zoning is a legislative function, in exercise of which "the governmental body has great latitude." Furlong Cos., Inc. v. City of Kansas City, 189 S.W.3d 157, 163 (Mo. banc 2006). Therefore, statutes requiring hearings on zoning proposals do so in order to aid the governmental body in making an informed decision. See 8A McQUILLIN MUN. CORP. Section 25:271 (3d ed. Supp. 2013) (hearing on zoning proposal is "in the nature of a legislative proceeding, the purpose of which is to ascertain pertinent information touching the zoning matter under consideration, including the views, interests, and objections of residents in the vicinity"); see also Montgomery v. Bremer County Bd. of Superiors, 299 N.W.2d 687, 693 (Iowa 1980) (holding that type of hearing contemplated in enabling statute for rezoning was "comment-argument"; purpose of hearing was primarily to aid board in gathering information to discharge legislative function); Miner v. City of Yonkers, 189 N.Y.S.2d 762, 768 (N.Y. Sup. Ct. 1959) (stating "purpose of a provision for a public hearing by a legislative body is to guard against hasty legislative enactments and to insure informed and deliberate action by the body").

---

technicalities solely applicable to the laws and rules of the zoning commission.

Freeze, 523 S.W.2d at 126 (quoting Palmer v. Mann, 201 N.Y.S. 525, 528 (N.Y. App. Div. 1923)) (internal alterations omitted). The majority applies this to mean essentially that legal technicalities should not be used to hinder interested parties in expressing their viewpoints. While I believe this is right in principle, that all public hearings should be fair, I would not necessarily rely on Freeze, as the Freeze Court goes on to say after the above-quoted language, that "[o]therwise, such a notice, instead of informing, would actually mislead, the public, including the persons immediately interested." Id. I do not see in Appellants' argument any assertion that the Commission's limitation on discussion caused confusion at the hearing about the actual topic of the Amendment, or that the Commission attempted to mislead the public by imposing such a limitation. However, even using this language of Freeze, I would not find that the Commission engaged in a tactic of using legal technicalities against lay persons to chill discussion, as will be apparent from my analysis, *infra*.

21

Thus, while a legislative hearing must afford interested parties an opportunity to share their views and evidence to support those views, the reason for doing so is to serve the ultimate purpose of the hearing. Having all viewpoints presented assists the governing body in making an informed decision that best serves its constituents.[48] To that end, a hearing allowing a reasonable opportunity for presentation of opinions and evidence for and against the proposed zoning amendment should suffice, even if it means all parties are unable to share their individual views in the manner or to the extent that they desire.[49] See Miner, 189 N.Y.S.2d at 768 (where hearing "held at a customary place and beginning at a proper hour and there was a very full presentation of the pros and cons," it was "immaterial that certain individuals were inconvenienced or limited in the matter of the personal presentation of their respective individual cases for or against the proposed action"); accord Greater Garden Ave. Area Ass'n v. City of Webster Groves, 655 S.W.2d 760, 765 (Mo. App. E.D. 1983) (in administrative context, where council had shown interest in concerns of citizens and had conducted full hearing, limitation of post-hearing discussion to questions directed at particular parties was not abuse of discretion).

Accordingly, reasonable limitations on the presentation of such evidence and opinions, so long as they do not restrain a particular viewpoint regarding the proposed amendment or demonstrate bias on the part of the legislative body, should be permitted within the legislative body's discretion. The goal is for the legislative body to be informed fully about each viewpoint—made up of all persons who share that viewpoint—

---

[48] Specifically, the constitutional standard is that the ultimate decision of the legislative body must "bear a substantial relationship to health, safety, morals, or the public welfare." State ex rel. Barber & Sons Tobacco Co. v. Jackson County, 869 S.W.2d 113, 117 (Mo. App. W.D. 1993); see also Flora Realty & Inv. Co. v. City of Ladue, 246 S.W.2d 771, 778 (Mo. banc 1952).

[49] Notably, the dictionary definition quoted by the majority is consistent with this idea. Of the three parts contained in the second definition of the term "hearing," which the majority quotes together in summary fashion, part (c) consists of the following definition: "a session (as of a legislative committee) in which testimony is taken from witnesses." Merriam-Webster's Collegiate Dictionary 574 (11th ed. 2012).

as a whole, rather than to fully hear each individual person's opinion. See Miner, 189 N.Y.S.2d at 768.

Thus, the question in the present case is whether the Commission's limitation on discussion here was reasonable in light of the circumstances. The public hearing requirement at issue is contained in Section 64.875, which states the following:

> [N]o amendments shall be made by the county commission except after recommendation of the county planning commission, or . . . of the county zoning commission, after hearings thereon by the commission.[50]

Appellants also assert Article 14, Section 323(a) of Franklin County's Land Use Regulations in Count I, which reiterates a hearing requirement:

> No order or recommendation that amends any of the provisions of these regulations may be adopted until a public hearing has been held on such order or recommendation.

Section 323 of the Land Use Regulations goes on to say that the published notice of any hearing must "[s]tate that substantial changes in the proposed amendment may be made following the public hearing." Section 323(d)(5). This is consistent with the proposition above, that the purpose of the hearing is to allow the Commission to make an informed decision regarding what eventual provisions are best for the citizens of Franklin County, in light of the affected citizens' views, and to alter and enact those provisions

---

[50] It is unclear exactly which commission mentioned in this section is required to hold a public hearing. In the present case, both the Planning and Zoning Commission and the County Commission held hearings, though the plain language of Section 64.875 does not seem to require both commissions to hold hearings. I take the word "thereon" in this section to refer to the recommendation, meaning that a county commission, upon receiving a recommendation from its planning and zoning commission, must hold a hearing on that recommendation. However, it could be taken to mean that a planning and zoning commission holds a hearing for the process of making its recommendation. In such a case, it could be that a planning and zoning commission's hearing suffices to meet this statute. Cf. Moore v. City of Parkville, 156 S.W.3d 384, 389-90 (Mo. App. W.D. 2005) (interpreting enabling statutes for cities to zone property, Sections 89.050 and 89.060; concluding hearing before planning commission that subsequently made recommendation to board was sufficient to satisfy notice and hearing requirements). However in the present case, regardless of which hearing would satisfy Section 64.875, the Franklin County Land Use Regulations explicitly require a hearing before the County Commission on any recommendation from the Planning and Zoning Commission.

23

accordingly. The primary purpose of the hearing is not to allow comment on the final wording of every regulation that will be passed, but rather to provide a forum for comments for the Commission to help formulate the eventual wording that is passed.[51] I believe the majority overlooks this crucial aspect of fairness in the context of a legislative hearing, and because of this, even the majority's determination of the adequacy of the petition fails to apply the proper fairness standard.[52]

Regardless, reviewing the record, the Commission's process for adopting the Amendment was as follows. The public hearing process consisted of two stages. Initially, the Planning and Zoning Commission held a public hearing, after which it submitted a recommendation containing proposed amendment language to the Commission (Recommendation). Then, in line with the requirements of both Section 64.875 and Article 14, Section 323(a) of the Land Use Regulations, the Commission published notice of a hearing on the Recommendation. The notice stated the following:

> The proposed amendments involve . . . utility and non-utility waste landfills and the definition and locations thereof.[53]

---

[51] See MCQUILLIN Section 25:271 ("[A]n additional public hearing ordinarily will not be required when the initial notice is broad enough to indicate the possibility of substantial change and substantial changes are made of the same fundamental character as contained in the notice, such changes resulting from objections, debate and discussion at the initial hearing").

[52] Though I do not believe review of the adequacy of the petition is the appropriate standard here, in light of the proper standard of fairness, I believe the petition actually fails to adequately state a claim for relief. In short, the petition admits there were two public hearings, one before the Planning and Zoning Commission, and one before the County Commission. The petition also admits that Appellants submitted comments, expert testimony, and documents to the Commission against the adoption of the Amendment. The petition set out the specific limitation on speech—that discussion of a specific coal ash landfill proposal would not be permitted—and the petition also attached the text of the Amendment, which did not contain a specific landfill proposal and encompassed changes to policies regarding both utility and non-utility waste landfills generally. The petition admits the Amendment was the subject of the public hearings. Given these statements in light of the fairness standard reiterated above, the petition itself shows that the limitation on testimony was reasonable and that Appellants took advantage of the opportunity to present their viewpoint against the Amendment to the Commission, which the Commission heard. However, applying what I believe is the proper standard of review, I would still review the fairness of the Commission's proceedings on the merits in light of the full record of the Commission.

[53] This wording is actually from the published notice for the continuation of the hearing, published on December 25-26, 2010. The original notice, for the commencement of the hearing on December 14, 2010, is not contained in the record.

24

The Recommendation contained changes to the definition section of the Land Use Regulations, to include definitions of utility and non-utility waste landfills. The Recommendation went on to lay out use regulations for each type of landfill.

The most controversial part of the Recommendation was within only the regulation section for utility waste landfills, where it stated that utility waste landfills would become a permitted use, subject to certain conditions. One of those conditions was that a utility waste landfill must be adjacent to and under common ownership with an existing power plant. Due to these conditions, the only power plant to which this regulation could apply at the time was Ameren's power plant located in Labadie, Missouri. Additionally, because at the time of the hearings on the proposed amendment, Ameren was in the process of making plans for a coal-ash landfill (Labadie landfill proposal), a type of utility waste landfill, Appellants argue that Ameren's Labadie landfill proposal was the true subject of the Recommendation.

The Commission's public hearing on the Recommendation took place on December 14, 2010, and then continued on February 8, 2011. On April 7, 2011, the Commission invited nine individuals with specialized knowledge who had testified at the public hearing to return to answer follow-up questions from the commissioners.

At the outset of the hearing on December 14, 2010, before taking any testimony, the Commission set some guidelines regarding how members of the public who were present could participate. These guidelines included that anyone who desired to testify must sign in and would be called in order, each person would be limited to seven minutes of testimony, and they could share their opinions but not ask questions of the Commission. Additionally, anyone could submit written exhibits or comments to the

Commission during the hearing, and they did not have to testify in order to have their written submissions considered by the Commission. Finally, the Commission's presiding commissioner, John Griesheimer (Commissioner Griesheimer), clarified the subject of the hearing:

> [W]e are here . . . to hear comments and opinions and testimony on landfills, on utility waste landfills and landfills in general. So if we start going off referring to Ameren and the proposal, . . . there is no proposal. There hasn't been anything filed yet, so that's going to be a totally separate issue. All we are here [to do] tonight is to comment, positive or negative, on the proposed regulations about utility waste landfills . . . . If we go off on a tangent about Ameren or about fly ash and all that, . . . I will interrupt you and say please stick to the issue itself, and that is "the regulation that is before us for the Planning and Zoning Commission."

The Commission then heard testimony from 43 members of the public who were present. Of those, three testified in favor of the Recommendation, and the rest were not in favor. At least six witnesses were permitted to testify about Ameren or refer to the Labadie landfill proposal without interruption. Commissioner Griesheimer did interrupt three witnesses and tell them to focus on the language of the Recommendation. Two witnesses reached the seven-minute time limit, received an additional minute to testify, did not finish their testimony in that time period, and were not given any additional time. The Commission received 36 exhibits that evening.[54]

The Commission continued the public hearing on February 8, 2011. Before receiving any testimony that day, Commissioner Griesheimer reiterated the same time limits regarding public testimony, as well as the ability to submit written exhibits or

---

[54] Not all of the exhibits received by the Commission are included in the legal file on appeal; however, according to Appellants' index of exhibits, of the 112 included (submitted throughout the course of the process), 5 were submitted by supporters of the Recommendation and 107 were submitted by opponents. See Appellants' Index to Legal File, v-xiii.

testimony. Additionally, only individuals who did not testify at the first hearing date would be permitted to testify at the continuation of the hearing on February 8, 2011, and again, the witnesses were not permitted to ask questions of the Commission. Commissioner Griesheimer did not state any limitation regarding the content of testimony. The Commission then heard testimony from 46 witnesses; all but two opposed the Recommendation. At least five witnesses testified specifically about Ameren's Labadie landfill proposal. The Commission received 30 documents, including written statements and exhibits, and Commissioner Griesheimer indicated they had also received several exhibits by electronic mail.

Finally, on April 7, 2011, the Commission invited nine witnesses with specialized knowledge who had testified previously to return in order for the Commissioners to ask follow-up questions. Commissioner Griesheimer stated that the proceedings were limited only to what had been addressed during the previous two sessions of the public hearing, and that no new evidence would be received. The Commissioners then heard information regarding coal-ash landfills in general and all the potential implications of such a landfill to the environment, as well as possible specifications for and projected effects of the Labadie landfill proposal in specific.[55] The Commission considered all of this information over several months and altered the language of the Recommendation before finally adopting the Amendment on October 25, 2011.

Appellants' petition asserts that this procedure failed to comply with the hearing requirements contained in Section 64.875 and in Article 14, Section 323 of the Land Use

---

[55] For example, based on the answers of one of the engineers for Ameren, Paul Reitz, it is clear that there was not a definite plan yet, and that any future plan would have to conform to whatever regulations the Commission adopted regarding utility waste landfills.

Regulations. After reviewing the transcript of the proceedings before the Commission, spanning over 1,000 pages of witness testimony over three days in the legal file on appeal, as well as just over 3,000 pages of exhibits received by the Commission and 300 pages of communications received by the Commission that are included in the legal file, I disagree. I would conclude that the Commission conducted a legally sufficient hearing regarding the proposed zoning amendments.

Not only did the Commission hold a public hearing as required, but the Planning and Zoning Commission did as well.[56] Both hearings spanned multiple days and included hours of testimony and numerous written submissions.[57] The one limitation imposed regarding content was that witnesses could not speak specifically about Ameren's Labadie landfill proposal, as it was premature given the fact that it may or may not conform to the regulations that the Commission may or may not eventually adopt. Moreover, the Recommendation language itself, addressing many subjects, made clear that all of those were the subject of the hearing. A specific proposed utility waste landfill was at best ancillary to the subject of utility waste landfills, which was just one of the subjects of the Recommendation. Therefore, while witnesses were permitted to discuss utility waste landfills in general and their concerns about coal-ash landfills in particular, as they directly relate to the land in Franklin County, the parties presiding over both

_____

[56] See *supra* n.43. My reading of the hearing provisions at issue here would lead me to conclude that only the hearing before the Commission was necessary to satisfy both of these provisions. Thus, the Planning and Zoning Commission's hearing provided additional opportunities for Franklin County citizens to be heard beyond what was minimally required.

[57] While there is no transcript of the Planning and Zoning Commission's hearing contained in the legal file on appeal, one witness at the Commission's hearing described the Planning and Zoning Commission's hearing as follows:

> I also would like to thank the Planning and Zoning Commission. I haven't heard anybody do that. I was at all of those hearings. Those folks spent dozens and dozens of hours, you know, at hearings, trying to get the issue right. I don't agree with a lot of the recommendations, but I think they should be commended. They spent a lot of time. I think they tried to do the right thing, and I think they should be commended.

28

hearings attempted to limit discussion specifically about Ameren. Even with that, some discussion about Ameren was allowed, and at the session on April 7, 2011, commissioners asked questions specifically about Ameren's processes and what the Labadie landfill proposal might entail.

Thus, in my view, the Commission imposed a reasonable limitation because the heart of the utility waste landfill regulations portion of the Recommendation had to do with the propriety of allowing a utility waste landfill in Franklin County. And, if a landfill was to be allowed, the purpose of the hearing was to inform the Commission about what kind of restrictions must be imposed so that the landfill would be safe. Only then, once standards had been established to ensure the safety of Franklin County residents, would it be appropriate to scrutinize a specific proposal and determine if such a landfill would in fact be safe. Moreover, despite this limitation, as the Commission received testimony over the course of the hearing, it chose not to enforce that limitation rigidly, or even at all by the end. This is ostensibly because it became clear that the building of a utility waste landfill adjacent to Ameren's power plant, while not the primary topic of the Recommendation, was dependent on any change to the zoning code.

I believe the record makes clear that this hearing procedure allowed all viewpoints to be fully presented, in line with the purpose of a legislative hearing. Everyone who wanted to speak was given an opportunity to do so. No one was stopped from discussing the dangers of coal-ash landfills or the impact of such a landfill in Franklin County and how one should be regulated if permitted. The clear majority of the testimony presented before the Commission was against the Recommendation. While expressing a desire to focus on the language of the Recommendation, the Commission also expressed numerous

times a desire to allow everyone to speak and to hear all sides of the issue.[58] The Commission conducted a follow-up session to ask specific questions of both opponents and proponents of the Recommendation who had specialized knowledge to contribute, which included questions about the Labadie landfill proposal specifically.[59] I simply cannot see how, given the purpose of the hearing to inform the Commission about the various viewpoints of the implications of the Recommendation, this hearing was unfair. Though the majority of people who testified at these hearings are extremely dissatisfied with the decision of the Franklin County Commission, this does not mean that these citizens were not given an opportunity to testify and express their concerns, opposition, fears, and anger over the Recommendation.[60]

Moreover, I believe we enter dangerous territory as it relates to our constitutional doctrine of separation of powers if we stray beyond confirming the minimum requirements of fairness are present and instead dissect a thorough legislative hearing

---

[58] Commissioner Griesheimer expressed this at the beginning of the hearing on December 14, 2010, and also made sure everyone knew that they would be permitted to submit written comments even if they did not testify. At the continuation of the hearing on February 8, 2011, Commissioner Griesheimer stated, "this will be the last hearing, so . . . we will not leave here until the last person is allowed . . . to give their testimony."

[59] There were nine witnesses at the follow-up session. Those who testified in support of the Recommendation were Paul Reitz, an engineer who helps design landfills as a consultant for Ameren; Lisa Bradley, member of a firm consulting with Ameren called Toxicology AD Com; Richard Ward, of Simmer Real Estate Services, an advisor to Ameren; and Mike Menne, vice president for Environmental Services for Ameren. Opponents of the Recommendation were Dr. Robert Criss, a geochemist with Washington University in St. Louis, who had written several papers about the Missouri River and its floodplains; Patricia Shuba, a resident of Labadie with a background in biology and health science, who was also part of the Labadie Environmental Organization; Dan Lang, president of The Lang Gang, an urban planning consulting firm hired by the Interdisciplinary Environmental Clinic at Washington University in St. Louis on behalf of the Labadie Environmental Organization; Chuck Norris, a geologist who for the previous 20 years had studied landfills and coal ash, specifically as it relates to toxicity levels in soil and water; and Mary Hinton, from the Washington University in St. Louis Interdisciplinary Environmental Clinic, discussing the toxicity of coal ash.

[60] For those citizens who are dissatisfied with the Commission's decision to adopt the Amendment or with how the Commission conducted its legislative affairs, those citizens have the unfettered right in future elections to unseat those Commission members who voted for the Amendment and to elect commissioners whose views align more with their own. At least one citizen of Franklin County intended to pursue this recourse, as expressed in the following email he sent to the Commission: "Commissioners, All I have to say in regards to your proposed Landfill regulations is enjoy your last term in office!"

such as this one, purporting to dictate the particular aspects of a legislative body's hearing. We are no more entitled to do this than a legislative body is entitled to tell a court how it should exercise its discretionary powers.

In any event, there is nothing from this record that convinces me that the Commission failed in its legislative duties to comply with the requirement of a public hearing for both the statute and applicable Land Use Regulations. I believe to hold otherwise would elevate form over substance. Therefore, I would find that the trial court properly denied relief on Count I of Appellants' petition. Accordingly, I would deny Point I of Appellants' appeal.

<u>Point II</u>

Appellants argue that the trial court erred in upholding the Amendment because it fails to promote the health, safety, and general welfare of Franklin County citizens as required by Franklin County's Land Use Regulations. I disagree.

As previously established, we review the decision of the Commission, rather than that of the trial court. See <u>Dotson</u>, 941 S.W.2d at 592. "The legislative body . . . has the duty to determine the use classification to be given any particular area." <u>Desloge v. St. Louis County</u>, 431 S.W.2d 126, 131 (Mo. 1968). In this case, that legislative body is the Commission. The Commission has great latitude in making zoning decisions. See <u>Furlong Co.</u>, 189 S.W.3d at 163. The Commission's decisions are presumed valid, and they will not be overturned unless they are clearly arbitrary and unreasonable. See <u>Desloge</u>, 431 S.W.2d at 131; <u>State ex rel. Helujon, Ltd. v. Jefferson County</u>, 964 S.W.2d 531, 536 (Mo. App. E.D. 1998). Appellants, as challengers of the Amendment here, have the burden of showing that the Commission's decision to adopt the Amendment was

31

unreasonable. See Desloge, 431 S.W.2d at 132; State ex rel. Kolb v. County Court of St. Charles County, 683 S.W.2d 318, 321 (Mo. App. E.D. 1984).

The parties disagree regarding the meaning of "unreasonable," and in turn the level of deference we pay the Commission's decision on appeal.[61] In review of legislative decisions, courts discuss the legal test using both the terms "substantial evidence"[62] and "fairly debatable." As these terms are applied in the legislative context, in a way that does not invade the legislative process and upholds the constitutional separation of powers doctrine, these two terms indicate the same scope of review.

In Binger v. City of Independence, the Supreme Court of Missouri discussed judicial review of a legislative decision, quoting an earlier Missouri Supreme Court case:

> The so-called "debatable" rule merely means that if there is substantial evidence both ways, then the legislative decision is determinative.

---

[61] Appellants argue that in order to affirm, we must find there is substantial and competent evidence on the record to support the legislative decision; while Ameren and the Commission argue that the decision must be upheld if it is "fairly debatable," a standard all parties deem more deferential. Appellants' argument is based on the Missouri Supreme Court's opinion in Gash v. Lafayette County, 245 S.W.3d 229 (2008). Our Supreme Court held that the plain meaning of Section 64.870.2 is that the certiorari procedure contained in Section 64.870.2 is the exclusive method of review for all types of zoning decisions, whether quasi-judicial or legislative. Id. at 234. Because certiorari review historically only lies for judicial or quasi-judicial decisions, and that type of review requires a finding of substantial and competent evidence of the lower tribunal's decision to affirm, one practitioner opines that the implication from Gash could be that the scope of judicial review is therefore now the same for legislative decisions reviewed by certiorari. See White, Curious County Zoning Law at 302. White also cites the source of the competent and substantial evidence standard on certiorari review, which is Article 5, Section 18 of the Missouri Constitution. Id. at 302 n.19. However, this section states that it applies to "decisions, findings, rules and orders . . . which are judicial or quasi-judicial . . . ." MO. CONST. art. V, § 18 (emphasis added). Thus, though Gash acknowledged an expansion of the types of decisions from which a party may request review by writ of certiorari, I do not agree that this procedural change also potentially effects a change in the standard of our review regarding legislative decisions that would permit a more invasive review of these decisions. As discussed, infra, legislative decisions have always been reviewed under a fairly debatable standard that requires substantial evidence to support the legislative decision. If in fact Gash effected a change in this standard, I agree that would implicate separation of powers concerns to the extent (if any) the competent and substantial evidence standard permits a more invasive review than the fairly debatable/substantial evidence standard. I disagree Gash did in fact bring about such a change.

[62] I note that "substantial evidence" in the legislative context and "substantial and competent evidence" in the administrative context, the latter of which being the standard advocated by Appellants, potentially connote differing levels of deference. However, that question is irrelevant in light of the fact that precedent clearly requires application of the fairly debatable/substantial evidence test to review of legislative decisions.

588 S.W.2d 481, 485 (Mo. banc 1979) (quoting City of Olivette v. Graeler, 369 S.W.2d 85, 96 (Mo. 1963)). The Binger court went on to apply this principle to the case in front of it:

> If we determine . . . as a matter of law that there is no substantial evidence to show the annexation was reasonable and necessary, as the court did in Graeler, then the annexation must be set aside. However, if the court concludes from the record that there is substantial evidence that the annexation was reasonable and necessary, then the issue was at least debatable and the legislative decision must be permitted to stand.

588 S.W.2d at 486. See also State ex inf. Mallet ex rel. Womack v. City of Joplin, 62 S.W.2d 393, 398 (Mo. 1933) ("If the question . . . was fairly debatable, that is, if there was substantial evidence each way so that reasonable men would differ about its necessity, then the decision of that question was for the city council and the city electorate and not for the court"); Land Clearance for Redevelopment Auth. of City of St. Louis v. Inserra, 284 S.W.3d 641, 645-46 (Mo. App. E.D. 2008) (discussing "fairly debatable" test, noting from precedent that judicial review of issue of reasonableness or arbitrariness focuses on "whether substantial evidence supports the legislative determination"; noting also that "absence of substantial evidence suggests that the legislative determination was unreasonable, arbitrary, or capricious," and "existence of such evidence suggests that the determination was, at least, fairly debatable"); Great Rivers Habitat Alliance v. City of St. Peters, 246 S.W.3d 556, 562-63 (Mo. App. W.D. 2008) (same).

Thus, for us to affirm, there should be substantial evidence on the record here to support the Commission's decision; because if there is not, then its decision was most likely arbitrary. See Inserra, 248 S.W.3d at 646. The existence of substantial evidence to

33

support either decision by the Commission requires us to affirm its legislative decision, as legislative decisions are presumed valid, and we may not substitute our opinion for the Commission. See id.; Elam v. City of St. Ann, 784 S.W.2d 330, 335 (Mo. App. E.D. 1990).

Applying this test to the record here, I would find that there is substantial evidence in the record to show that the Commission's decision regarding the Amendment was fairly debatable. Thus, I would find we are required to let the Commission's legislative decision stand.

The relevant regulation is contained in Article 14, Section 325 of Franklin County's Land Use Regulations:

> Any . . . amendment must promote the health, safety, morals, comfort and general welfare of Franklin County by conserving and protecting property and building values, by securing the most economical use of the land and facilitating the adequate provision of public improvements in accordance with the master plan adopted by Franklin County.

Appellants focus on the word "promote" in this section, arguing that according to the dictionary definition of the word "promote," any amendment must contribute positively to the growth and prosperity of, or further, the health, safety, and general welfare of Franklin County.

However, this language seems to be drawn from the stated purpose of a Missouri county's police power, of which zoning is an exercise. "The purpose of police power is to promote the public health, safety, and welfare." St. Charles County v. St. Charles Sign & Elec., Inc., 237 S.W.3d 272, 275 (Mo. App. E.D. 2007) (quoting Bezayiff v. City of St. Louis, 963 S.W.2d 225, 229 (Mo. App. E.D. 1997)). Regarding zoning, this Court has interpreted that purpose as follows:

34

> To determine whether an ordinance is enacted pursuant to a legitimate exercise of police power, the court considers whether the requirements of the ordinance *have a substantial and rational relationship to* the health, safety, peace, comfort, and general welfare of the inhabitants of the municipality. . . . If reasonable minds might differ as to whether a particular ordinance *has a substantial relationship to the protection of* the general health, safety, or welfare of the public, then the issue must be decided in favor of the ordinance.

Id. (emphasis added); see also Ballard v. City of Creve Coeur, 419 S.W.3d 109, 118-19 (noting that though police power is broad, ordinance "must still have a rational relationship to the health, safety, peace, comfort, and general welfare of the inhabitants of the municipality, and it must conform with state law on the same subject"). This mirrors the constitutional standard that the ultimate decision of the legislative body must "bear a substantial relationship to health, safety, morals, or the public welfare." State ex rel. Barber & Sons Tobacco Co. v. Jackson County, 869 S.W.2d 113, 117 (Mo. App. W.D. 1993); see also Flora Realty & Inv. Co. v. City of Ladue, 246 S.W.2d 771, 778 (Mo. banc 1952). Thus, the term "promote" in the context of an exercise of police power to zone land has been interpreted to mean "have a substantial and rational relationship to" and to also be in conformity with state law.

The concerns raised by Appellants are the following: (1) that the Amendment fails to protect property values as required by Article 14, Section 325 of the Land Use Regulations; (2) that there is no evidence that the Amendment promotes the health and safety of Franklin County, based on evidence that coal ash contains harmful toxins, the various risks of ingestion of those toxins, and the site of the Labadie landfill proposal poses various risks to the water supply; (3) that the Amendment does not promote the general welfare of Franklin County, based on possible liability exposure as well as

35

increased truck traffic through Labadie; and (4) that the Amendment fails to conform to Franklin County's master plan, which includes goals to preserve the rural character of Franklin County, to minimize ground contaminants to protect groundwater, and to keep development out of flood-prone areas.

The Commission heard conflicting evidence regarding each of these concerns,[63] and the Commission was charged not only with taking into account the concerns of citizens who lived in the area of Ameren's plant, but the entire county as a whole. A primary task of legislating is weighing competing interests and determining the best outcome for its constituency as a whole. Sometimes, that even requires choosing between what individual legislators may view as the lesser of two evils. Unfortunately, especially when it comes to regulating industries that provide services but the process of providing those services can potentially produce adverse effects on the environment or individuals, there is not always a legislative decision that results in a purely positive outcome.[64]

It was the Commission's duty to sort all of this evidence out and arrive at a decision. Among the substantial evidence to support the Commission's eventual Amendment language, the Commission heard evidence that the coal ash from Ameren's Labadie plant had been tested and did not contain a dangerous level of toxins, that the Labadie landfill proposal contained adequate safeguards to prevent both airborne toxins and water contamination, and that the state regulations allowed for this kind of

---

[63] In fact, Appellants in their reply brief acknowledge as much: "To be sure, the [r]ecord contains conflicting evidence regarding the extent of the risks posed by the Amendment[]." App. Reply Br. at 18.
[64] For instance, based on some of the evidence in the legal file, while the Commission could theoretically shut down Ameren's Labadie facility altogether because of alleged harmful effects on the environment and health of citizens, the result would be that a large percentage of Franklin County residents would be without or with very limited and expensive electricity, Ameren employees of the plant would be without jobs, and Franklin County would be without $3 million per year in property tax revenue.

development in the floodplain. The Commission heard evidence that a newly-designed landfill of this sort would offer greater protection than the existing coal ash ponds, which were leaking. The Commission also heard evidence that allowing a landfill next to the plant would reduce truck traffic. The Commission heard evidence regarding property values surrounding landfills in other states, but also had to take into account the fact that there is already an existing plant and coal ash pond in Labadie. The Commission did hear evidence that it was unlikely that surrounding property owners would be able to see the landfill described in the Labadie landfill proposal, and there was also evidence that suburban development had flourished in some areas of Franklin County from which the plant was visible. The Commission was informed regarding existing state and federal regulations applicable to utility waste landfills, and the Amendment language the Commission adopted contained more restrictive regulations. The language in the Amendment also differed substantially from the Recommendation, indicating that the Commission weighed the evidence and testimony received.[65]

The record here contains substantial evidence from which the Commission could have reasonably found that the requirements eventually contained in the Amendment have a substantial and rational relationship to the health, safety, and general welfare of Franklin County, and are in conformity with state law. The Commission was the legislative body charged with weighing all the competing interests of its citizens. There is no evidence that the Commission's decision was unreasonable or arbitrary—to the

---

[65] This is also reflected in the preamble to the Amendment, which contains the following statements:

It is without question that the citizens of Franklin County need and deserve both cost efficient electrical power as well as a safe and clean environment, both now and in the future. It is, therefore, incumbent upon the members of this Commission to employ the wisdom and common sense which they have been given to find and adopt the best solution possible to address the potentially conflicting goals and to merge them into a solution which is in the best interest of all of the citizens of Franklin County, Missouri.

37

contrary, it is clear the eventual language adopted was the product of the Commission's consideration of a wide range of viewpoints and an extensive amount of information over a period of several months. Accordingly, I would find that we are unable to reverse the Commission's decision, whether we agree with the decision or not. I would therefore deny this point.

Conclusion

I respectfully disagree with the majority's standard of review. Under the applicable certiorari procedure for review of this legislative zoning decision as well as the circumstances of this case, I would find that that we can review the questions raised in Count I regarding the legality of the Commission's decision in light of the Commission's record. Based on the record and applicable law, I would find that Appellants have failed to show either that the Commission's process of adopting the Amendment was illegal or that the Commission's decision was clearly arbitrary and unreasonable. Thus, I would affirm the decision of the Commission. However, in light of the issues involved here, I concur in transferring this case to the Missouri Supreme Court.

Gary M. Gaertner, Jr., Judge